# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-3312/3536
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee/Cross-Appellant, | * |
| | * |
| v. | * |
| | * |
| Manuel Villareal-Amarillas, | * |
| | * |
| Appellant/Cross-Appellee, | * |

_____

No. 05-3539
_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Juan H. Gonzalez, | * |
| | * |
| Appellee, | * |

_____

Submitted:  May 18, 2006
Filed:  June 30, 2006

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

Manuel Villareal-Amarillas (Villareal-Amarillas) and Juan Gonzalez (Gonzalez) each pled guilty to conspiracy to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. The district court sentenced Villareal-Amarillas to 328 months' imprisonment and Gonzalez to 151 months' imprisonment. The government appeals Villareal-Amarillas's and Gonzalez's sentences, arguing the district court erred in its drug quantity findings and its failure to rule on the credibility of the government's witnesses.

Villareal-Amarillas cross-appeals his sentence. His counsel moved to withdraw and filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and Villareal-Amarillas filed a pro se supplemental brief.

For the reasons stated below, we affirm in part and reverse in part.

I.    BACKGROUND

Villareal-Amarillas pled guilty pursuant to a written plea agreement, stipulating to a drug quantity in excess of 500 grams of methamphetamine. Also in the plea agreement, Villareal-Amarillas and the government agreed to dispute the specific drug quantity, above 500 grams, at the time of sentencing. Gonzalez pled guilty without a plea agreement, and he admitted during his plea colloquy to a drug quantity in excess of 500 grams of methamphetamine.

The United States Probation Office prepared a presentence investigation report (PSR) for both Villareal-Amarillas and Gonzalez. The PSRs attributed base offense levels of 38 to each man, representing a relevant drug quantity in excess of fifteen

kilograms of methamphetamine. Villareal-Amarillas and Gonzalez each raised a timely objection to his respective PSR's drug quantity calculation.

Due to Villareal-Amarillas's career offender status, his PSR assigned him a criminal history category of VI. The PSR also recommended a four-level enhancement for Villareal-Amarillas's leadership role in the offense, a two-level enhancement for the possession of a firearm in connection with the offense, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 41. Based on a total offense level of 41 and a criminal history category of VI, the PSR calculated a sentencing range under the United States Sentencing Guidelines (Guidelines) of 360 months' to life imprisonment. Villareal-Amarillas objected to the PSR's leadership and firearm enhancements.

Gonzalez's PSR assigned him a criminal history category of II. The PSR also recommended a two-level enhancement for possession of a firearm in connection with the offense, resulting in a total offense level of 40. Based on a total offense level of 40 and a criminal history category of II, the PSR calculated Gonzalez's sentencing range from 324 to 405 months' imprisonment.

At the joint sentencing hearing, the government presented testimony from four witnesses: co-defendant Brian Valentine (Valentine), co-conspirators Phil Hunter (Hunter) and Debra Florez (Florez), and Jasper County Drug Task Force Officer Randee Kaiser (Officer Kaiser). Valentine testified he provided dimethylsulfone powder or MSM, a cutting agent, to Villareal-Amarillas's methamphetamine operation. Villareal-Amarillas's organization cut methamphetamine on a one-to-one ratio, with one pound of MSM for every pound of methamphetamine. Valentine testified he was asked "to get 20 pounds [of MSM] about every two weeks," which would result in Villareal-Amarillas's organization obtaining approximately twenty pounds of uncut methamphetamine every two weeks for redistribution. Valentine further testified that from January 2004 to his arrest on March 11, 2004, he purchased

one pound of methamphetamine from Villareal-Amarillas on a daily basis. On three or four occasions, Gonzalez contacted Valentine to arrange for Valentine to take additional one-pound quantities.

Hunter testified he traveled to Atlanta, Georgia, with Villareal-Amarillas to pick up a large shipment of methamphetamine. Hunter and Villareal-Amarillas drove to a residence in Atlanta where Villareal-Amarillas disassembled the tailgate of his pickup truck. Two men dressed in clear plastic protective suits carried fifteen to twenty four-pound bags of methamphetamine from the residence and attempted to place the bags inside the disassembled tailgate. Because the bags were too large to fit into the compartment, the men divided the methamphetamine into smaller bags and placed as many of these smaller bags into the tailgate as would fit. Hunter further testified Villareal-Amarillas also obtained "[a]bout ten" one-pound bags of higher grade methamphetamine for himself. In addition to the trip to Atlanta, Gonzalez told Hunter about a drug buying trip Gonzalez had made to Chicago, Illinois, obtaining "[s]everal pounds" of methamphetamine.

Florez testified she saw Villareal-Amarillas with "a couple pounds" of methamphetamine, which Villareal-Amarillas cut and gave to Gonzalez. Florez also sold methamphetamine for Villareal-Amarillas during a two-month period, selling "[a]bout a quarter ounce every couple days." Villareal-Amarillas and Gonzalez also told Florez about a drug buying trip they made to Chicago, where they obtained "a few pounds at least" of methamphetamine.

Officer Kaiser testified that during a warranted search of Villareal-Amarillas's residence on February 14, 2004, officers seized seventeen grams of methamphetamine, ten one-pound canisters of MSM, two pistols, paraphernalia for the concealed storage of contraband, and $17,000 in cash. Officer Kaiser further testified that during a second warranted raid on Villareal-Amarillas's residence on March 19, 2004, officers found Villareal-Amarillas with bundles of cash in his

-4-

possession. Inside Villareal-Amarillas's residence, officers found $78,000 in cash, a .45 caliber pistol, a tally notepad, and multiple one-pound canisters of MSM. Officer Kaiser testified that based upon his training and experience, the $78,000 cash represented the proceeds that could be realized from the sale of three to four pounds of methamphetamine on the street, or that could be used to purchase approximately ten pounds of methamphetamine at wholesale prices from California suppliers.

At the conclusion of the testimony, the district court and the government discussed drug quantity:

> THE COURT: Well, with regard to the [drug] quantity, I can't tell, so I'm just going to leave the quantity as it is per the plea agreement.
>
> . . . .
>
> [THE GOVERNMENT]: We did not stipulate to . . . 500 grams in the plea agreement. We stipulated it was at least 500 grams.
>
> THE COURT: But the point I have, I have no evidence to show me that it's any more than that, definitive evidence that I have heard. I have heard a lot of poundage and stuff, but I don't know how that equates to the 15 kilograms that you're talking about. That was not made clear to me.

The district court found Villareal-Amarillas and Gonzalez responsible for distributing more than 500 grams but less than 1.5 kilograms of methamphetamine, resulting in a base offense level of 32. The district court also denied Villareal-Amarillas's objections to the leadership and firearm enhancements. With a total offense level of 35 and a criminal history category of VI, the district court calculated Villareal-Amarillas's sentencing range between 292 and 365 months' imprisonment. Based on a total offense level of 31 and a criminal history category of II, the district

court calculated Gonzalez's sentencing range between 121 and 151 months' imprisonment.

The district court then asked the parties for their positions regarding where within the sentencing range to sentence Villareal-Amarillas:

> THE COURT: Okay, I assume the defense wants the low end.
>
> [DEFENSE COUNSEL]: Your Honor, we do.
>
> THE COURT: And government wants–
>
> [THE GOVERNMENT]: The high end, Your Honor.
>
> THE COURT: Surprise, surprise.
>
> [THE GOVERNMENT]: And I can explain that if the court would–
>
> THE COURT: I think I have heard enough evidence about–one way or the other.

Before imposing a sentence, the district court asked "if either counsel knows of any legal reason why the court should not impose a sentence at this time." The government responded, "I do not, Your Honor." The district court then sentenced Villareal-Amarillas to 328 months' imprisonment and Gonzalez to 151 months' imprisonment.

The government appeals, urging us to remand for resentencing. The government argues the district court failed to explain its drug quantity calculations and rule on the witnesses' credibility. The government contends if the district court had performed the necessary drug quantity calculations, Villareal-Amarillas and Gonzalez would have faced longer Guidelines sentencing ranges. In response, Villareal-Amarillas argues the district court was not "required to somehow keep a

-6-

tally of each amount testified to by witnesses, add it up, and then convert that amount to kilograms to find the drug amount argued by the government," and the witnesses' testimony does not prove the drug quantities alleged by the government. Gonzalez claims the government failed to preserve the issue by failing to argue it before the district court, and the district court committed no plain error.

Villareal-Amarillas cross-appeals his sentence. His counsel has moved to withdraw and filed an <u>Anders</u> brief, arguing the district court clearly erred in its factual findings and imposed an unreasonable sentence under the factors set forth in 18 U.S.C. § 3553(a). In a pro se supplemental brief, Villareal-Amarillas argues (1) the district court erred in imposing (a) the leadership enhancement, and (b) the firearm possession enhancement; (2) the government breached the plea agreement; and (3) his guilty plea was not knowing and intelligent.

## II.    DISCUSSION
### A.    Relevant Drug Quantity and Base Offense Levels
The government contends the district court erred in setting Villareal-Amarillas's and Gonzalez's base offense levels at 32 because the district court did not make specific factual findings supporting its relevant drug quantity determination. The government did not, however, lodge a specific objection during the sentencing hearing to the district court's drug quantity findings. Accordingly, the scope of our review is limited; we will not reverse unless we find plain error. Fed. R. Crim. P. 52(b); <u>United States v. Olano</u>, 507 U.S. 725, 731-32 (1993).

Plain error occurs if (1) the district court committed an error, e.g., deviation from a legal rule; (2) the error was plain, i.e., clear under current law; and (3) the error affected substantial rights, i.e., affected the outcome of the district court proceedings. <u>Olano</u>, 507 U.S. at 732-34. When a forfeited error meets these requirements, we may, in exceptional circumstances and in the interests of justice, exercise our remedial discretion "if the error 'seriously affect[s] the fairness, integrity

or public reputation of judicial proceedings.'"  Id. at 736 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

Federal Rule of Criminal Procedure 32(i)(3)(B) states "for any disputed portion of the presentence report or other controverted matter" during sentencing, the district court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Although we prefer district courts specify the basis for their drug quantity findings, see United States v. Randolph, 101 F.3d 607, 609 (8th Cir. 1996), a district court satisfies Rule 32(i)(3)(B)'s requirements if it makes a clear statement indicating "it was relying on its impression of the testimony of the witnesses at trial, coupled with its specific rejection of the defendant's quantity objections," United States v. Flores, 73 F.3d 826, 835 (8th Cir. 1996).

In this case, the relevant drug quantity was a disputed issue, and the district court had an obligation under Rule 32(i)(3)(B) to make specific factual findings supporting its ruling on the disputed matter, unless the matter would not affect sentencing or would not be considered in sentencing.  Here, the disputed matter–the relevant drug quantity–absolutely would affect sentencing because the relevant drug quantity determines the Guidelines base offense level.  The government's four witnesses gave substantial testimony regarding drug quantities, but the district court neither indicated which portions of the witnesses' testimonies it found credible, nor specified the basis for its drug quantity findings.  The conversion from ounces and pounds to grams and kilograms can readily be found in the Measurement Conversion Table, U.S.S.G. § 2D1.1, cmt. n.10.  By finding a relevant drug quantity of 500 grams, despite substantial testimony from four witnesses which, if credited,[1] would

---

[1]The district court did credit the co-defendant's and co-conspirators' testimony in enhancing Villareal-Amarillas's base offense level by four levels for his leadership and organizer role, and by two levels for his possession of a dangerous weapon.

support a relevant drug quantity in excess of fifteen kilograms of methamphetamine, the district court did not make a sufficient ruling for purposes of Rule 32(i)(3)(B).

This omission was error, was plain, and affected the substantial rights of the defendants and the government, directly affecting the sentencing outcomes for both Villareal-Amarillas and Gonzalez. We conclude the omission seriously affects the integrity, public reputation, and fairness of the sentencing proceedings, certainly from the government's and the public's perspectives. Accordingly, we find plain error resulting in potentially unreasonable sentences, depending on the district court's credibility findings and quantity calculations, and we exercise our discretion to reverse the district court's relevant drug quantity findings and corresponding base offense level calculations.

Our holding in this regard renders other issues on appeal moot, with the exception of Villareal-Amarillas's sentence enhancements and the issues raised in Villareal-Amarillas's pro se supplemental brief relating to his plea agreement.

### B.    Sentence Enhancements

The district court enhanced Villareal-Amarillas's base offense level by four levels for being a leader or organizer, see U.S.S.G. § 3B1.1, and by two levels for the possession of a firearm in connection with the offense, see U.S.S.G. § 2D1.1. We review de novo a district court's application of the Guidelines, and we review factual findings for clear error. United States v. Mashek, 406 F.3d 1012, 1017 (8th Cir. 2005).

### 1.    Leadership Enhancement

Villareal-Amarillas argues the district court violated United States v. Booker, 543 U.S. 220 (2005), by enhancing his sentence based upon a preponderance of the evidence standard, rather than presenting the issue to a jury for a determination beyond a reasonable doubt. Villareal-Amarillas's argument is unavailing. We have

held judicial factfinding using a preponderance standard does not violate <u>Booker</u> or the Fifth and Sixth Amendments.  <u>See</u> <u>United States v. Pirani</u>, 406 F.3d 543, 551 n.4 (8th Cir. 2005) (en banc); <u>see</u> <u>also</u> <u>United States v. Garcia-Gonon</u>, 433 F.3d 587, 592 (8th Cir. 2006).  Additionally, Villareal-Amarillas stipulated in his plea agreement to judicial factfinding by a preponderance of the evidence standard as to all contested issues relating to the determination of his sentence.

Villareal-Amarillas also argues insufficient evidence supported imposition of the leadership enhancement.  U.S.S.G. § 3B1.1(a) provides "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels."  This "adjustment for being an organizer or leader is intended to reflect relative responsibility compared to other participants in the crime."  <u>United States v. Rodriguez</u>, 112 F.3d 374, 377 (8th Cir. 1997).

According to co-defendant Valentine, Villareal-Amarillas

> was the leader of it. . . .  Because he was the one that was getting all the money, getting all the dope.  He's the one that had the connection down in Mexico.  He's the one that had the connections in California and he knew everything that was going on.  He was actually the one giving the orders to people.

Based on this testimony alone, although corroborated by others too, the district court correctly imposed the leadership enhancement.

### 2.  Firearm Enhancement

Villareal-Amarillas challenges the firearm enhancement.  U.S.S.G. § 2D1.1 authorizes a two-level enhancement to a drug trafficking sentence "[i]f a dangerous weapon (including a firearm) was possessed" by the defendant.  The firearm

enhancement "reflects the increased danger of violence when drug traffickers possess weapons." Id. § 2D1.1, cmt. n.3.

Valentine testified he saw pistols and an assault rifle in Villareal-Amarillas's possession, and Hunter testified he saw Villareal-Amarillas in possession of semiautomatic pistols and rifles. The police discovered multiple pistols during the searches of Villareal-Amarillas's residence. This testimony supports the district court's two-level enhancement for possession of a firearm. See id.; United States v. Braggs, 317 F.3d 901, 905 (8th Cir. 2003) (quoting U.S.S.G. § 2D1.1, cmt. n.3: "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense").

### C. Plea Agreement

In his pro se supplemental brief, Villareal-Amarillas contends the government breached the plea agreement and his guilty plea was not knowing and intelligent. Because Villareal-Amarillas failed to attempt to withdraw his guilty plea in the district court, his claims are not cognizable in this appeal. See United States v. Murphy, 899 F.2d 714, 716 (8th Cir. 1990) (holding "claims that a guilty plea was involuntary and that a plea bargain was not kept are issues that first must be presented to the district court and are not cognizable on direct appeal").

## III. CONCLUSION

For the reasons stated above, we vacate Villareal-Amarillas's and Gonzalez's sentences, reverse the district court's drug quantity findings and corresponding base offense level calculations, and remand this case to the district court for resentencing consistent with this opinion. We affirm the district court's imposition of the four-level enhancement for Villareal-Amarillas's leadership role in the offense, and the two-level enhancement for Villareal-Amarillas's possession of a firearm in connection with the offense. Because we remand for resentencing, we do not otherwise address Villareal-Amarillas's contentions the district court clearly erred in

its factual findings and imposed an unreasonable sentence, and we deny Villareal-Amarillas's counsel's motion to withdraw.

_____