# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1354

_____

United States of America

*Plaintiff - Appellee*

v.

Mitchell Lynn Atterberry

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 11, 2014
Filed: January 12, 2015
[Published]

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

PER CURIAM.

Mitchell Atterberry pleaded guilty to conspiracy to distribute, and to possess with the intent to distribute, methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), and 851 (Count 1), and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 851 (Count

2).[1]  He was sentenced to a total term of imprisonment of 240 months.  Atterberry appeals, arguing the district court[2] erred in its determination of drug quantity.  We affirm.[3]

Atterberry and his co-defendant, Tami Zeugin, came in contact with law enforcement seven times over an approximately two-year period through traffic stops, the execution of search warrants, and a controlled buy.  Each time, officers seized methamphetamine; more than 54 grams of methamphetamine were seized over the two-year period, as well as more than $20,000 in cash.  The government presented evidence that this amount of cash translated to 496 grams of methamphetamine.

Within days of his arrest, Atterberry agreed to speak with Drug Enforcement Administration Agent Steve Mattas in an attempt to cooperate.[4]  Atterberry admitted obtaining a quarter- to a half-pound of methamphetamine twice per week for the previous two years.  Agent Mattas also interviewed Zeugin, who likewise estimated she and Atterberry purchased between a quarter- and half-pound twice per week over a two-year period.

---

[1]He also pleaded guilty to conspiracy to escape from custody, in violation of 18 U.S.C. § 371 (Count 4), and attempted escape from custody, in violation of 18 U.S.C. § 751 (Count 5), and was sentenced to a 60-month term of imprisonment on each, to be served concurrently with the drug sentences.  He does not raise any issues related to the escape convictions.

[2]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

[3]We have jurisdiction under 28 U.S.C. § 1291.

[4]No agreement to cooperate was ever finalized; instead, Atterberry's statements were used against him as a confession.

Atterberry's presentence report (PSR) initially recommended a base offense level of 26. This was based on the 54 grams actually seized from Atterberry and Zeugin as well as the additional amount of methamphetamine that the seized cash represented. The government objected, asserting Atterberry's and Zeugin's post-arrest statements supported a drug-quantity finding of 23.5 kilograms.[5] The PSR was revised to reflect a quantity of 23.5 kilograms and a base offense level of 38. Atterberry objected, asserting that this greater drug quantity was based on unreliable information.

At sentencing, Agent Mattas testified regarding his interviews with Atterberry and Zeugin. Atterberry did not present any evidence[6] and instead urged the court to disregard his statements to Agent Mattas because he had inflated the amounts of methamphetamine with which he had been involved in an attempt to make himself more useful to the government. The district court rejected this argument, noting that Agent Mattas testified he had discussed with Atterberry how the quantity of drugs for which he was held responsible would affect his sentencing Guidelines range. The court also found Zeugin's and Atterberry's admissions paralleled each other in "pretty remarkable detail." Based on Mattas's testimony, the district court overruled Atterberry's objection to the PSR's estimate of drug quantity, stating:

> I'm going to overrule your objection. I do believe that the government
> has established that over the course of the conspiracy, approximately
> 15 grams or more of methamphetamine have been distributed between

[5]The government's drug-quantity estimate was based on multiplying two quarter-pound purchases of methamphetamine per week—the lower estimate of quantity admitted by Atterberry—over a two-year period.

[6]Atterberry suggests his counsel sought to call Zeugin as a witness. The sentencing transcript indicates, however, that he did not seek to call Zeugin as a witness in regard to drug quantity but rather to offer evidence about the factors listed in 18 U.S.C. § 3553(a).

the defendant and this codefendant and, therefore, there's a base offense level of 38 that is appropriate in this case.

After assessing other sentencing enhancements, the district court found Atterberry's sentencing Guidelines range was 360 months to life. Acknowledging that much of its drug-quantity determination was based on estimates, however, the court decided a sentence of 240 months was more appropriate. Atterberry appeals his sentence, contesting the district court's calculation of drug quantity.

Atterberry first argues the district court did not make sufficiently explicit findings under Federal Rule of Criminal Procedure 32(i)(3)(B)[7] when it determined his base offense level was 38. He claims that the only *specific* finding the court made with respect to drug quantity was its statement, "I do believe that the government has established that over the course of the conspiracy, approximately 15 *grams* or more of methamphetamine have been distributed between the defendant and this codefendant and, therefore, there's a base offense level of 38 that is appropriate in this case." (Emphasis added). He points out that a finding that he distributed 15 grams does not correlate to the stated base offense level of 38. He further asserts that the district court failed to identify the method by which it calculated the drug quantity attributable to him. He contends we must remand for resentencing so that the district court can make more specific factual findings and detail the basis for its findings.

---

[7]Federal Rule of Criminal Procedure 32(i)(3)(B) provides that at sentencing the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

Because Atterberry did not raise this argument during the sentencing hearing, our review is for plain error. See United States v. Villareal-Amarillas, 454 F.3d 925, 930 (8th Cir. 2006). Under plain-error review, Atterberry must show "(1) the district court committed an error, e.g., deviat[ed] from a legal rule; (2) the error was plain, i.e., clear under current law; and (3) the error affected substantial rights, i.e., affected the outcome of the district court proceedings." Id. (citing United States v. Olano, 507 U.S. 725, 732–34 (1993)).

Here, Atterberry has not shown plain error. The record does show an error: The district court stated Atterberry's drug quantity was 15 *grams* or more of methamphetamine, which would not convert to base offense level 38. The record also shows, however, that the error was a misstatement. First, a drug quantity of 15 grams was below the 54 grams of methamphetamine both parties agree was actually seized during the two-year investigation of Atterberry and Zeugin. Second, a drug quantity of 15 grams would have resulted in a sentencing Guideline range below the statutory mandatory minimum sentence applicable to the conspiracy count to which Atterberry pleaded.[8]

Finally, neither side advocated for a drug quantity of 15 grams. Atterberry himself urged the court to adopt the drug quantity contained in the preliminary PSR—54 grams—rather than the drug quantity in the final PSR—23.5 kilograms. At the sentencing hearing, the district court was presented with a choice of finding a

---

[8]The statutory mandatory minimum sentence for Count 1, conspiracy to distribute and to possess with intent to distribute methamphetamine, was not less than 10 years' imprisonment. Had the court found Atterberry's drug quantity to be 15 grams, his base offense level would have been 18. See USSG § 2D1.1(c)(11). With a criminal history category III, his sentencing Guidelines range would have been 41 to 51 months' imprisonment. No mention was made in the PSR or at the sentencing hearing that the advisory Guideline range recommended a sentence lower than the statutory mandatory minimum sentence.

drug quantity of 54 grams or a drug quantity of 23.5 kilograms. Relying on the testimony presented, the court chose the latter.[9] The district court's acknowledgment later in the hearing that the drug quantity was based on estimates, which made the Guideline range higher than the court found appropriate, further bolsters our conclusion that the district court's statement that the government had established a drug quantity of approximately 15 grams, rather than kilograms, was a misstatement. Cf. United States v. Drapeau, 644 F.3d 646, 656–57 (8th Cir. 2011) (upholding district court's written judgment when sentencing record showed court "apparently inadvertently said [drug] testing was required within fifteen days of date of 'sentencing,' not 'release from prison'"). As a result, Atterberry cannot show that any error "affected the outcome of the district court proceedings." Villareal-Amarillas, 454 F.3d at 930.

Atterberry further asserts the district court clearly erred in holding him responsible for 15 kilograms or more of methamphetamine because that amount was based on unreliable statements he made concerning his pattern of dealing drugs rather than on actual transactions. He notes that the quantity of drugs seized—54 grams of methamphetamine over the course of a two-year investigation—was inconsistent with his statements and those of Zeugin. He does not deny making the statements; rather he posits that both he and Zeugin had a motive to exaggerate their activities when they spoke to Agent Mattas. He further asserts his statements conflict with Zeugin's statements because hers were much more detailed. Finally, Atterberry contends his statements should not have been considered because they were "in the nature of plea negotiations" and thus inadmissible pursuant to Fed. R. Evid. 410. He argues that,

_____

[9]We disagree with Atterberry's argument that the record is insufficient to determine how the district court arrived at its finding he was responsible for 15 kilograms or more of methamphetamine. The record shows Atterberry specifically objected to the methodology used in the PSR—multiplying two quarter-pound purchases of methamphetamine per week over a two-year period—and the district court overruled his objection, adopting the recommendation in the PSR.

like plea negotiations, such discussions should be excluded from use at sentencing to encourage future defendants to discuss their drug activities candidly with law enforcement.

For purposes of sentencing, a district court's calculation of drug quantity is a factual finding, "which we review for clear error, applying the preponderance-of-the-evidence standard." United States v. Walker, 688 F.3d 416, 420 (8th Cir. 2012) (internal citation omitted). We will not overturn the district court's factual determinations "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. at 420–21 (quoting United States v. Miller, 511 F.3d 821, 823 (8th Cir. 2008)).

Determining whether Atterberry had exaggerated his involvement in drug trafficking was a credibility question for the district court. See United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). The court's finding that Atterberry had been truthful during his proffer interview was not clear error. Nor was the district court's finding that his statements were corroborated by Zeugin in "pretty remarkable detail." As for the statements being "in the nature of plea negotiations," Atterberry admits that Rule 410 does not apply to the type of statements he made to law enforcement in this case. See Fed. R. Evid. 410 (evidence of statements made "during plea negotiations with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea" is not admissible against the defendant). Even if we agree there may be some policy reasons for not basing sentences on historical quantity estimates offered during uncounseled proffer sessions, we trust the district courts to take into account all relevant factors when determining drug quantity, as well as when ruling on departures and variances from the advisory Guideline range. In this case, the district court exercised its discretion to impose a sentence below what the advisory Guidelines recommended for the very reason Atterberry suggests: that drug quantity was based

on an estimate that was "greater than necessary to meet the goals" of the sentencing. Atterberry's sentence is long, but we cannot conclude that the district court abused its discretion when imposing that sentence.

For the reasons set forth above, we affirm the judgment of the district court.

_____