NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2510
_____

UNITED STATES OF AMERICA

v.

JOHN GASSEW,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-10-cr-00045-001)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit LAR 34.1(a)
March 4, 2013

Before:  RENDELL, AMBRO and VANASKIE, Circuit Judges

(Opinion Filed:  March 12, 2013)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant John Gassew challenges his conviction under the Hobbs Act, arguing

that the government failed to prove that the robberies of which he was convicted affected

interstate commerce. Gassew additionally contends that the District Court erred in

refusing his proposed jury instruction regarding the interstate commerce element of the

Hobbs Act. Both of Gassew's arguments on appeal fail, however, because the evidence was sufficient to prove the robberies affected interstate commerce and the District Court properly refused Gassew's requested jury instruction. Accordingly, we will affirm.

## I. Background

Since we write principally for the benefit of the parties who are familiar with this case, we recite only the essential facts and procedural history.

On December 9, 2007, Gassew robbed Danny Boy's Bar in Philadelphia, Pennsylvania ("Danny's"). Armed with a handgun, Gassew stole $200 in cash from the cash register, $1,000 in business proceeds from an employee's pocketbook, money in the bartender's tip jar, the bartender's personal cash, and various personal belongings from other employees and bar patrons. At the time of the robbery, Danny's sold Miller and Budweiser beer, which were imported from other states.[1]

On October 28, 2009, Gassew robbed a 7-Eleven store in Philadelphia. Again armed with a handgun, Gassew stole $140 in cash from the cash register and $4,854 in store merchandise. At the time of the robbery, the 7-Eleven sold numerous brands of cigarettes, including Newport cigarettes, which are manufactured and transported from out of state.[2] Gassew stole thirty-five cartons of the Newport cigarettes.

_____

[1] Danny's received Miller beer from Muller, Inc., a beer wholesaler in Philadelphia. Muller obtained Miller beer from Miller breweries all located outside of Pennsylvania. Danny's received Budweiser beer from Brandt's Distributors, which received the beer from Penn Distributor's, Inc., a beer wholesaler in Philadelphia. Penn Distributors obtained Budweiser from breweries all located outside of Pennsylvania.

[2] Newport cigarettes are manufactured by Lorillard Tobacco Company in North Carolina. Most 7-Eleven stores in Philadelphia get their merchandise from the McLane Company,

A grand jury charged Gassew with three counts of interference with interstate commerce by robbery under the Hobbs Act. 18 U.S.C. § 1951(a). Following a two-week trial, a jury found Gassew guilty of the above-mentioned robberies. The District Court sentenced Gassew to 444 months of imprisonment, supervised release for a term of five years, restitution of $7,194, and a special assessment of $400.

The instant appeal followed.[3]

## II.  Discussion

A. Sufficiency of the Evidence

Gassew first argues that the government failed to prove that the robberies affected interstate commerce sufficient to satisfy the interstate commerce element of the Hobbs Act as required by the Commerce Clause of the United States. U.S. CONS. art. 1, § 8, cl. 3. He challenges his convictions in two ways: 1) the government did not prove the goods were in interstate commerce at the time of the robberies; and 2) the government did not prove a close and substantial effect on interstate commerce. Both arguments fail.

This Court applies a "particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence. It is not for [the court] to weigh the evidence or to determine the credibility of the witnesses. Rather, [the court] must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime

which transports cigarettes by truck from North Carolina to a warehouse in New Jersey, and then to a distribution center in Pennsylvania.

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

beyond a reasonable doubt." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (citations and internal quotation marks omitted).

A conviction under the Hobbs Act requires the government to show that "(1) the defendant committed 'robbery or extortion' or attempted or conspired to do so, and (2) that conduct 'obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce.'" *United States v.* Walker, 657 F.3d 160, 178-79 (3d Cir. 2011*) cert. denied,* 132 S. Ct. 1122 (2012) (quoting 18 U.S.C. § 1951(a)). The Hobbs Act defines commerce broadly "to include 'all . . . commerce over which the United States has jurisdiction.'" *Walker*, 657 F.3d at 179 (quoting 18 U.S.C. § 1951(b)(3)); *see also Stirone v. United States,* 361 U.S. 212, 215 (1960) ("[The Hobbs Act] speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."). This Court has held that "proof of a *de minimis* effect on interstate commerce is all that is required" in a Hobbs Act prosecution. *United States v. Urban*, 44 F.3d 754, 766 (3d Cir. 2005). Further, such a *de minimis* effect need only be "slight, subtle or even potential." *United States v. Haywood*, 363 F.3d 200, 210 (3d Cir. 2004).

Appellant argues that his convictions cannot stand under the Hobbs Act because the goods at issue lost their interstate commerce connection upon delivery to their original destination in Pennsylvania. Gassew asserts that the goods were not in interstate commerce at the time of the offenses because the goods were delivered to Pennsylvania distributors before being delivered to the victims' businesses. Gassew fails to cite any relevant authority to support his interpretation of the interstate commerce requirement.

4

"The most important case" Gassew relies on to support his interpretation is a decision of the District Court for the District of Arizona involving a prosecution pursuant to 18 U.S.C. § 924(b). *United States v. Havelock*, 560 F. Supp.2d 828, 832-34 (D. Ariz. 2008). Gassew fails to acknowledge that *Havelock* interpreted the language and legislative history of 18 U.S.C. § 924(b), a completely different statute, in concluding that a § 924(b) conviction requires the proscribed act and interstate receipt be contemporaneous. *Havelock*, 560 F. Supp.2d at 832.

By contrast, we have never required that the proscribed act and interstate receipt be contemporaneous under the Hobbs Act. Rather, we have repeatedly reinforced the low hurdle required to satisfy the interstate commerce requirement under the Hobbs Act. *E.g., United States v. Powell*, 693 F.3d 398, 404-05 (3d Cir. 2012) *cert. denied*, 133 S. Ct. 901 (2013) (affirming Hobbs Act conviction where defendant stole business proceeds from business owners' homes because defendant targeted business proceeds of businesses engaged in interstate commerce).

Gassew additionally argues that the Hobbs Act requires the government to prove that the robberies had a close and substantial effect on interstate commerce, and that the government failed to prove this effect as required under Commerce Clause jurisprudence. *See Jones v. United States*, 529 U.S. 848 (2000); *United States v.* Morrison, 529 U.S. 598 (2000); *United States v. Lopez,* 514 U.S. 549 (1995). Gassew asserts that because he is charged with a crime local in nature, local authorities should prosecute the case and any Congressional regulation of such local conduct unjustifiably encroaches on the state's domain.

5

This Court has explained, however, that "the government is not required to present proof of a substantial effect on commerce in an individual case in order to show a Hobbs Act violation." *Walker*, 657 F.3d at 179 (quoting *Urban*, 404 F.3d at 766) (quotation marks omitted). The Hobbs Act differs from the statutes struck down in *Lopez* and *Morrison* because the Hobbs Act contains a "jurisdictional element," limiting its scope, *United States v. Clausen*, 328 F.3d 708, 710 (3d Cir. 2003),[4] and "regulates quintessentially economic activities." *Walker*, 657 F.3d at 179.[5] So, "[i]f the defendant's conduct produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, it is sufficient to uphold a prosecution under [§ 1951]." *Haywood*, 363 F.3d at 209-10 (quoting *Jund v. Town of Hempstead,* 941 F.2d 1271, 1285 (2d Cir. 1991)). Moreover, "a showing that business assets were depleted" may satisfy the interstate commerce requirement. *Haywood*, 363 F.3d at 210 (quoting *United States v. Zeigler*, 19 F.3d 486, 493 (10th Cir. 1994).

The evidence readily establishes that the businesses Gassew robbed were engaged in interstate commerce to satisfy the interstate commerce nexus under the Hobbs Act because both businesses received goods from out of Pennsylvania. In *Haywood*, this Court found the interstate commerce requirement was satisfied when the victim bar sold two brands of beer that were manufactured outside of the Virgin Islands, *Haywood* 363

---

[4] *See Clausen*, 328 F.3d at 710 (quoting 18 U.S.C. § 1951(a)) ("[T]he Hobbs Act contains a 'jurisdictional element'-that is, it only applies to crimes which 'obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce.'").

[5] *See Walker*, 657 F.3d at 179 ("[P]roperty crime like robbery and extortion are . . . indisputably 'economic' under our post-*Lopez* precedents.").

F.3d at 210-11, and the defendant stole $50 to $70 in business proceeds. *Id.* at 202.

Similarly here, it is uncontested that Danny's and 7-Eleven sold items that were manufactured in other states and shipped to Pennsylvania. Specifically, Danny's sold two brands of beer, Miller and Budweiser, that were manufactured at out-of-state breweries and shipped to Pennsylvania. The 7-Eleven sold Newport cigarettes that were manufactured in North Carolina and eventually shipped to Pennsylvania. Gassew stole business proceeds from both Danny's and 7-Eleven, thus depleting assets that could be used to purchase more out-of-state goods. He also stole numerous cartons of Newport cigarettes, which caused the 7-Eleven to use assets to purchase additional Newport cigarettes from out of state.

Thus, the evidence presented sufficiently supports the finding that the robberies affected interstate commerce for purposes of the Hobbs Act. We affirm the District Court's conviction under the Hobbs Act.

B. Jury Instructions

Gassew also argues that the District Court erred in refusing to give his supplemental jury instruction on the interstate commerce element of the Hobbs Act. This Court reviews "a district court's refusal to give a certain instruction for abuse of discretion, but exercise[s] plenary review to determine whether the jury instructions stated the proper legal standard." *Powell*, 693 F.3d at 406 n.9 (citing *United States v. Leahy,* 445 F.3d 634, 642 (3d Cir.2006)).

In instructing the jury on the interstate commerce element, the District Court followed the Third Circuit model jury instruction, entitled "Hobbs Act – Affecting

7

Interstate Commerce." The District Court also included a supplemental instruction proposed by the government, describing the depletion-of-assets theory as discussed above. However, the District Court refused to give Gassew's supplemental instruction. Gassew argues that his proposed jury instruction should have been given because the decision of whether the goods were in interstate commerce was a question of fact for the jury to decide. Gassew asserts that a jury could find the goods at issue were no longer in interstate commerce because they arrived at Pennsylvania distributors before arriving at the victim businesses, even if they originated from out of state. The government opposes the requested instruction because Gassew's proposed instruction applies to prosecutions for theft of interstate shipments in violation of 18 U.S.C. § 659, not a Hobbs Act robbery.

Gassew does not challenge either instruction given by the Court; rather he only argues that the Court erred in refusing to give his requested supplemental jury instruction. The jury instruction Gassew requested, however, lacks any pertinent authority, and instead cites several cases that did not involve prosecutions under the Hobbs Act. As explained above, Gassew cites no authority related to the Hobbs Act to support his theory that the goods lost their interstate character upon arriving in Pennsylvania, and this Court has never made this finding. This Court requires only a *de minimis* effect on interstate commerce to satisfy the interstate commerce requirement under the Hobbs Act. *Urban*, 404 F.3d at 762-66. The District Court did not abuse its discretion in rejecting Gassew's proposed instruction because the instruction given by the District Court reflected circuit precedent in requiring the government to prove a minimal effect on interstate commerce for conviction. *See Powell*, 693 F.3d at 407 (finding no abuse of discretion when District

8

Court used the same Third Circuit model instructions and a depletion-of-the-assets theory

for the Hobbs Act).

For the reasons stated above, we will affirm the judgment of the District Court.