UNITED STATES of America

v.

John GASSEW.

**Criminal Action No. 10–45–1.
Civil Action No. 13–7550.**

United States District Court,
E.D. Pennsylvania.

Signed Aug. 21, 2014.

---

John Gassew, pro se.

### *MEMORANDUM*

ANITA B. BRODY, District Judge.

Currently before me is John Gassew's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth below, I will deny Gassew's § 2255 motion.

## I. BACKGROUND

### A. Trial

On March 15, 2011, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Gassew with three counts of robbery which interfered with interstate commerce ("Hobbs Act robbery"), in violation of 18 U.S.C. § 1951(a) (Counts One, Three, and Five), and three counts of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Counts Two, Four, and Six). Gassew pled not guilty to the charges and decided to represent himself. On January 23, 2012, Gassew's jury trial began. On February 1, 2012, the jury found Gassew guilty of two of the robberies (Counts One and Five) and the related firearms counts (Counts Two and Six), and not guilty of the robbery charged in Count Three and the related firearm count charged in Count Four. Specifically, the jury convicted Gassew of robbing Danny Boy's Bar and a 7–Eleven store while armed with a handgun. At trial, the government presented the following details about the robberies:

### 1) Danny Boy's Bar Robbery

On December 9, 2007, at approximately 1:30 a.m., four men with masks and guns entered Danny Boy's Bar located at 7447 Torresdale Avenue, Philadelphia, Pennsylvania. Gassew was one of the masked men, and appeared to be the leader. Armed with a gun, Gassew approached the patrons and employees of the bar and demanded that they give him their money, jewelry, and cell phones. Gassew stole $200 in cash from the register and an additional $1,000 in business proceeds from an employee's pocketbook, money from the bartender's tip jar, and cash and various personal belongings from other employees and bar patrons. At the time of the robbery, Danny Boy's Bar sold Miller and Budweiser beer, which were imported from other states.

Although Gassew was wearing a mask and a hood, the mask only covered the bottom half of his face, and the hood did not fully cover Gassew's hair. The witnesses from the bar observed that Gassew had either braids or corn rows in his hair. The day after the robbery, five witnesses from the bar positively identified Gassew, from an eight person photo array, as the robber who had stolen items from them and the bar. Three of these witnesses also made in court identifications of Gassew during the trial.

Additionally, on December 9, 2007, at approximately 8:30 a.m., the Philadelphia Police Department sent flash information over the radio that a crime was in progress and that police officers should be on the lookout for a small white vehicle. An officer located the small white vehicle, which was a Chevy Cavalier, and found Gassew and two other men standing two feet behind the car. Gassew fled, but was later stopped by another police officer. Two police officers had seen Gassew alone in the same white Chevy Cavalier in November 2007.

On the afternoon of December 9, 2007, after receiving a search warrant, officers processed and searched the Chevy Cavalier. No fingerprints were recovered from the car. However, many items were found in the car, including at least fifteen cell phones, a half ski mask meant to cover the bottom portion of a person's face, a Tweety Bird bracelet, a March birth stone ring, and rolls of quarters.

On December 10, 2007, several witnesses identified items recovered from the Chevy Cavalier as items involved in the Danny Boy's Bar robbery. One of the witnesses identified the Tweety Bird bracelet and the birth stone ring as items that had been

stolen from her while she was at Danny Boy's Bar. Another witness identified the ski mask as the mask that Gassew had worn when he robbed the bar, and the rolls of quarters as the same ones that had been stolen from the bar. A third witness identified one of the cellphones found in the Chevy Cavalier as his Motorolla cellphone that had been stolen from him while he was at Danny Boy's Bar.

### 2) 7–Eleven Store Robbery

On October 28, 2009, between 2:00 a.m. and 2:30 a.m., Gassew robbed a 7–Eleven store located at 8101 Oxford Avenue, Philadelphia, Pennsylvania. During the robbery, Gassew pointed his gun at the employee's face and hit the employee with his gun. Gassew stole $140 in cash from the register, and $4,854 in store merchandise, primarily cigars and cigarettes. The stolen merchandise included 35 cartons of Newport Cigarettes, which are manufactured and imported from out of state.

During the robbery, Gassew wore a blue hoodie, gloves, and a white undershirt on his face that he used as a mask. After the robbery, the store clerk told police officers that the robber fled in an older truck that looked brown. A witness, noticed Gassew exiting the store wearing a mask, carrying a black handgun and a black trash bag filled with stuff. The witness noticed that the robber was a light skinned black male wearing a blue hoodie. The witness saw Gassew get into an older model pickup truck that was a very dark color with a thick stripe down the side in a light color. The witness watched the robber head Eastbound on Rhawn Street. The witness then called 911 and reported what he observed. A video from the outside of the 7–Eleven store showed that the robber arrived at the store in a dark colored pickup truck with a wide light colored stripe on its side. In the video, the robber arrived

wearing a white mask and a blue hoodie. The robber left the store wearing the same items and driving the same pickup truck.

The Philadelphia Police Department sent flash information over the radio that a gun point robbery was in progress. The suspect was described as a black male wearing a bandana and a dark hoodie, who fled the location in a dark pickup truck. Following the first flash information, the Philadelphia Police Department sent updated flash information that the truck had white stripes on the side and the suspect was last seen driving Southbound on Oxford Avenue from Rhawn Street. An officer responding to the flash information was at the intersection of Magee Avenue and Oxford Avenue when he saw Gassew driving a dark pickup truck with a broad white stripe on the side. Gassew was wearing a dark blue hoodie. The truck sped off and the officer chased it. When the truck came to the 6100 block of Oxford Avenue it spun out of control and hit into the wall of a cemetery. Gassew fled the truck and began to run. During the chase, the officer shot Gassew because he believed Gassew had a weapon. The officer caught Gassew and then sent him to the hospital. When Gassew arrived at the hospital the emergency room staff took off his clothing, including a blue-hooded jacket.

A black knit glove was discovered at the scene of the chase. Inside the truck, officers recovered a black handgun, a Newport cigarette butt, and a white tee shirt. The white tee shirt looked like the tee shirt the robber had worn as a mask on his face. Gassew's DNA was found on the glove, the Newport cigarette butt, and the white tee shirt.

At trial, Gassew testified that he was selling marijuana in the parking lot of the cemetery when he heard a vehicle crash. He came out of the parking lot to see what

had happened when a police officer started chasing him. Gassew denied being the driver of the pickup truck, but admitted that he was wearing a blue hoodie when he was brought to the hospital.

## B. Sentence

On May 15, 2012, the Court sentenced Gassew to 444 months of imprisonment, five years of supervised release, restitution in the amount of $7,194, and a $400 special assessment.

## C. Appeal

Gassew opted not to represent himself on appeal. His court appointed counsel filed an appeal challenging Gassew's convictions for robbery which interfered with interstate commerce. On appeal, Gassew's counsel argued that the government failed to prove that the robberies affected interstate commerce sufficient to satisfy the interstate commerce element of the Hobbs Act robberies. Specifically, Gassew's counsel argued that Gassew's convictions could not stand because the goods at issue lost their interstate commerce connection upon delivery to Pennsylvania. Thus, counsel asserted that the goods were not in interstate commerce at the time of the offenses because they were delivered to Pennsylvania distributors before they reached Danny Boy's Bar or the 7–Eleven store. The Third Circuit rejected counsel's argument that the goods had lost their interstate commerce connection, explaining that "we have never required that the proscribed act and interstate receipt be contemporaneous under the Hobbs Act." *United States v. Gassew,* 519 Fed. Appx. 764, 766 (3d Cir.2013). The Third Circuit also rejected another argument by Gassew's counsel that the government did

not prove a close and substantial effect on interstate commerce. *Id.* at 767.

Lastly, Gassew's counsel argued that the District Court erred in refusing to give Gassew's supplemental jury instruction on the interstate commerce element of the Hobbs Act robberies. The Third Circuit concluded that Gassew's proposed instruction incorrectly asserted that the goods lost their interstate commerce connection upon delivery to Pennsylvania distributors. *Id.* at 768. Thus, the Third Circuit held that the district court did not abuse its discretion in rejecting Gassew's proposed instruction. *Id.*

On March 12, 2013, the Third Circuit affirmed Gassew's judgment of conviction and sentence. On June 4, 2013, Gassew filed a petition for certiorari before the United States Supreme Court. On October 7, 2013, the United States Supreme Court denied certiorari.

## II. STANDARD OF REVIEW

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). A petitioner is entitled to an evidentiary hearing unless the motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.[1] *Id.*

## III. DISCUSSION

Gassew contends that he is entitled to relief because appellate counsel rendered ineffective assistance of counsel.

---

1. Gassew is not entitled to an evidentiary hearing because the motion, exhibits, and records conclusively establish that his claims are not meritorious.

■ In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established the legal framework for determining Sixth Amendment claims of ineffective assistance of counsel. *Strickland* sets forth a two-part test for claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. "Under *Strickland*'s first prong, a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance." *Grant v. Lockett,* 709 F.3d 224, 234 (3d Cir.2013). A court's evaluation of an attorney's performance must be "highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The second prong of *Strickland,* prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Gassew alleges eight separate grounds for relief based on the ineffectiveness of appellate counsel. I address Gassew's ineffective assistance of counsel claims below.

## A. Lack of Probable Cause to Arrest Gassew

■ Gassew claims that appellate counsel rendered ineffective assistance of counsel by failing to argue on appeal that police officers lacked probable to cause to arrest him after the 7–Eleven store robbery. At trial, the arresting officer testified that after receiving flash information describing the suspect and the truck, he spotted Gassew driving a truck and wearing clothing that matched the flash information, Gassew then fled, and the officer arrested Gassew after the chase. The arresting officer testified that the flash information described the suspect as wearing a dark hoodie. On cross-examination, the arresting officer acknowledged that in his statement to Internal Affairs, made months after the arrest, he had mistakenly stated that the flash information described the suspect as wearing a blue hoodie rather than a dark hoodie. Gassew argues that the arresting officer lacked probable cause to arrest him because of this minor discrepancy in the officer's description of the color of the hoodie.[2]

---

**2.** Gassew also argues that this discrepancy violated his due process rights under the 5th Amendment. However, the arresting officer's

conflicting statements were presented to the jury, and the prior inconsistent statement to Internal Affairs was admitted into evidence.

■ Prior to trial, Gassew failed to file a motion to suppress evidence based on this alleged unlawful arrest. A defendant waives his Fourth Amendment claim if he fails to file a motion to suppress. *United States v. Martinez–Hidalgo*, 993 F.2d 1052, 1057–58 (3d Cir.1993) ("Martinez's Fourth Amendment claim that there was no reasonable basis for the seizure requires little discussion as he concedes that he never filed a motion to suppress in the district court. Thus, he has waived this claim.") Thus, Gassew waived this claim.

Appellate counsel did not render deficient performance by failing to raise a waived claim. Moreover, Gassew is not prejudiced by counsel's failure to raise this Fourth Amendment claim because it would not have succeeded on appeal. Therefore, I will deny Gassew's claim for ineffective assistance of counsel on this basis.

## B. Improper Admission of Evidence

Gassew claims that appellate counsel rendered ineffective assistance of counsel by failing to challenge this Court's admission of two types of evidence. Before trial, the government filed two motions in limine, requesting that this Court rule on the admissibility of the evidence prior to trial. In its motions in limine, the government sought to introduce: (1) evidence that patrons and employees of Danny Boy's Bar had been robbed by Gassew at the same time as he robbed the bar; and (2) evidence that Gassew and three co-conspirators had robbed an individual, minutes before the Danny Boy's Bar robbery, who was located only a few blocks away from the bar. During pretrial hearings, this Court granted both motions in limine and ruled that the evidence was admissible at trial. Gassew asserts that this Court erred in admitting this evidence

under Federal Rule of Evidence 404(b), and that counsel should have raised this error on appeal.

### 1. Robbery of Patrons and Employees Inside Danny Boy's Bar

■ Gassew asserts that this evidence was admitted improperly under Rule 404(b). This evidence, however, was not admitted pursuant to Rule 404(b). Rather, this Court held that the robbery of patrons and employees inside Danny Boy's Bar was admissible as intrinsic evidence. Intrinsic evidence includes: (1) evidence that directly proves the charged offense; and (2) uncharged acts performed contemporaneously with the charged crime if the acts facilitated the commission of the charged crime. *United States v. Green*, 617 F.3d 233, 248–49 (3d Cir.2010). Intrinsic evidence is not analyzed under Rule 404(b) because it is "part and parcel of the charged offense." *Id.* at 245.

■ Evidence that Gassew robbed patrons and employees of Danny Boy's Bar at the same time that he was robbing the bar is intrinsic evidence because it directly proves the charged offense. This evidence was not admitted pursuant to 404(b). Therefore, Gassew's claim that counsel was ineffective for failing to argue that this Court erred in admitting the evidence under Rule 404(b) is meritless.

### 2. Robbery of an Individual Prior to the Robbery of Danny Boy's Bar

■ Gassew also asserts that this Court erred in admitting evidence of the robbery of an individual near Danny Boy's Bar under Rule 404(b). Federal Rule of Evidence 404(b) prohibits "[e]vidence of a crime, wrong, or other act ... to prove a person's character in order to show that

The jury was able to use these inconsistent statements to assess the credibility of the arresting officer. Thus, no due process violation occurred.

on a particular occasion the person acted in accordance with the character," but permits admission of this evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." To be admissible under Rule 404(b), evidence must be "(1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under [Federal] Rule [of Evidence] 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *United States v. Caldwell*, 760 F.3d 267, 277–78, 2014 WL 3674684, at *7 (3d Cir.2014).

Gassew does not contend that the evidence was admitted without a proper purpose, was irrelevant to that proper purpose, or was not accompanied by a limiting instruction. Rather, he argues that this Court failed to do the third step of the analysis, balancing the prejudicial nature of the evidence against its probative value. Moreover, Gassew argues that even if this Court had performed the proper balancing test under Federal Rule of Evidence 403,[3] it would reveal that the probative value of the evidence is substantially outweighed by unfair prejudice.

■■■■■ "Before prior act evidence may be admitted under Rule 404(b), [The Court of Appeals] require[s] district courts to balance the probative value of the proffered evidence against its prejudicial effect under Rule 403." *Caldwell*, 760 F.3d at 283, 2014 WL 3674684, at *13. "When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, [the Court of Appeals] will rarely

disturb its ruling. Where, however, the court failed to perform this analysis, or where its rationale is not apparent from the record, there is no way to review its discretion." *United States v. Sampson*, 980 F.2d 883, 889 (3d Cir.1992) (citation omitted). The Court of Appeals will reverse a district court's decision to admit 404(b) evidence if the court fails to conduct a Rule 403 balancing or explain the rationale for its Rule 403 balancing, and its reasoning is not apparent from the record. *Caldwell*, 760 F.3d at 284, 2014 WL 3674684, at *14; *United States v. Smith*, 725 F.3d 340, 348 (3d Cir.2013); *Sampson*, 980 F.2d at 889. However, the improper admission of evidence does not require reversing a conviction if the error was harmless. *United States v. Cross*, 308 F.3d 308, 326 (3d Cir.2002); *see Caldwell*, 760 F.3d at 285, 2014 WL 3674684, at *15.

■■■■■ "The test for harmless error is whether it is highly probable that the error did not contribute to the judgment. This high probability requires that the court possess a sure conviction that the error did not prejudice the defendant." *Caldwell*, 760 F.3d at 285, 2014 WL 3674684, at *15 (citation omitted) (internal quotation marks omitted). "Under the 'highly probable' standard, however, there is no need to disprove every reasonable possibility of prejudice." *Cross*, 308 F.3d at 326 (internal quotation marks omitted).

In its motion in limine, the government argued that the robbery of an individual close in time and location to the Danny Boy's Bar robbery, by the same number of armed men who had robbed the bar, was admissible evidence under 404(b) because it showed that Gassew participated in a

---

**3.** Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

common scheme or plan, and had the opportunity, to rob Danny Boy's Bar. The government also argued that this evidence was not unfairly prejudicial because it was "not being offered to show propensity, but rather evidences Gassew's December 9, 2007 course of conduct, of which the Danny Boy's Bar robbery is part and parcel." ECF No. 64.

At the pretrial hearing on the motion in limine, the government again argued that this evidence was admissible under Rule 404(b) to show that Gassew participated in a common scheme or plan, and had the opportunity, to rob Danny Boy's Bar. The government, however, did not argue the admissibility of the evidence under Rule 403, and I did not conduct a Rule 403 analysis on the record. Nevertheless, I held that this evidence was admissible under Rule 404(b).

Although the government argued in its motion in limine that this evidence is not unduly prejudicial because it is highly relevant to the Danny Boy's Bar robbery that occurred in 2007, the government made no argument as to the relevancy of this evidence as to the two 2009 robberies for which Gassew was also on trial. It is not apparent from the record how this evidence is relevant for any proper, non-propensity purpose to the 2009 robberies. Thus, it is not apparent from the record that any determination was made that the probative value of this evidence is not substantially outweighed by unfair prejudice.

█ If appellate counsel had raised this issue on appeal, the Court of Appeals would likely have found that this evidence was improperly admitted because this Court's 403 balancing is not apparent from the record. *See Caldwell*, 760 F.3d at 284–85, 2014 WL 3674684, at *14; *Smith*, 725 F.3d at 348; *Sampson*, 980 F.2d at 889. There is not a reasonable probability that the outcome of the appeal would have been different, however, because it was harmless error to admit this evidence.

At trial, the government produced plenty of uncontroverted evidence that Gassew committed the armed robberies of Danny Boy's Bar and the 7–Eleven store. For the Danny Boy's Bar, the government put on evidence that five witnesses had identified Gassew as the robber in an eight person photo array. Additionally, three witnesses made in court identifications of Gassew as the robber. On the same day as the robbery, officers found Gassew standing directly behind a Chevy Cavalier. Two officers had seen Gassew alone in the same car only a month before the robbery. Inside the Chevy Cavalier, officers recovered numerous items that were stolen from Danny Boy's Bar patrons and employees, including a cellphone, rolls of quarters, a Tweety Bird bracelet, and a birth stone ring. Moreover, the officers found a ski mask in the Cavalier that a witness identified as the mask that had been used in the robbery.

For the 7–Eleven store robbery, the government put on evidence from an employee of the store that he was robbed by an armed man wearing gloves, a white tee shirt mask, and a blue hoodie. The employee saw the robber leave in a truck. Another witness also saw the robber leave the store in a truck with a wide stripe. The witness stated that the robber had a black handgun and was a black male wearing a blue hoodie and a white mask. Video surveillance from the store corroborated the witnesses' statements. Shortly after the robbery, an officer observed a black male wearing a blue hoodie who was driving a truck with a wide stripe. When the officer approached the suspect, the man in the truck fled. The officer chased after the truck until it crashed into a wall. Eventually, after chasing the man on foot, the officer apprehended the man. In

court, the officer identified Gassew as the man he chased and arrested. Gassew was wearing a blue hoodie at the time of his arrest.

Gassew testified in his defense that he had never been in the truck and therefore, could not have been the robber. He alleged that he was mistakenly identified as the man in the truck after the crash because he had been selling marijuana nearby at the time of the accident. However, the government introduced evidence that Gassew's DNA was on two items recovered from the truck, a Newport cigarette butt and a white tee shirt that resembled the mask the robber had worn. Newport cigarettes were one of the items that had been stolen from the store. Officers also found a black handgun in the truck that resembled the one used in the robbery. Additionally, Gassew's DNA was on a glove they found at the scene of the chase that resembled the gloves the robber had worn.

██ Based on the overwhelming evidence presented against Gassew, there is a high probability that the error did not contribute to the judgment.[4] Gassew was not prejudiced by appellate counsel's failure to raise the Rule 404(b) issue because there is no reasonable likelihood that the outcome would have been different. Therefore, I will deny Gassew's claim for

ineffective assistance of counsel on this basis.

## C. Sufficiency of the Evidence

Gassew claims that appellate counsel rendered ineffective assistance of counsel by failing to argue on appeal that the evidence was insufficient to convict him because he is the victim of mistaken identity. During the trial, Gassew never moved for a judgment of acquittal on any of the crimes for which he was convicted.[5]

██ A defendant must move for a judgment of acquittal at the conclusion of the evidence to properly preserve for appeal issues regarding the sufficiency of the evidence. *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir.2001). If a defendant fails to move for a judgment of acquittal, the Court of Appeals reviews the sufficiency of the evidence under the plain error standard. *Id.* "This standard is met when there is an 'error' that is 'plain' and that 'affects substantial rights.'" *Id.* The defendant bears the burden of proving plain error. *Id.* "A court's deviation from a legal rule constitutes 'error.' A 'plain' error is one that is 'clear' or 'obvious.' An error is deemed to have 'affected substantial rights' if it was prejudicial in that it affected the outcome of the District Court proceedings." *Id.* (citations omitted). In

---

4. "[T]he prejudice associated with character evidence is quite real: ... It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters...." *Caldwell*, 760 F.3d at 284, 2014 WL 3674684, at *14 (internal quotation marks omitted). At trial, Gassew told the jury in his opening statement that he had been locked up for 23 other robberies. Additionally, during his testimony, he stated that he had been charged with "a whole bunch of cases." Tr. 1/31/12 at 9. Regardless of whether the individual robbery had been admitted into evidence, the jury would have been aware that Gassew was a "bad man"

because Gassew chose to tell the jury about his many other arrests for robbery. The admission of the individual robbery likely had very little impact on the jury's assessment of Gassew's character, yet another reason to conclude that the erroneous admission of the individual robbery did not contribute to the judgment.

5. Gassew did not move for a judgment of acquittal on his counts of conviction (Counts One, Two, Five, and Six). However, he did move for a judgment of acquittal on Counts Three and Four, the counts for which he was found not guilty.

examining the sufficiency of the evidence under the plain error standard, the Court of Appeals "review[s] the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *Id.*

Because Gassew never moved for a judgment of acquittal, his sufficiency of the evidence argument would have been reviewed under the plain error standard on appeal. As discussed in the previous section, there is an abundance of evidence upon which a rational trier of fact could have found Gassew guilty beyond a reasonable doubt. Appellate counsel did not render deficient performance by failing to raise the sufficiency of this evidence, and Gassew is not prejudiced by counsel's failure to do so, because this issue would not have succeeded on appeal. Therefore, I will deny Gassew's claim for ineffective assistance of counsel on this basis.

### D. Interstate Commerce

As the basis for three separate grounds for relief, Gassew argues that appellate counsel rendered ineffective assistance of counsel by failing to argue on appeal that the District Court or the Prosecutor erred in failing to submit to the jury Gassew's supplemental interstate commerce instruction. Despite Gassew's assertion, however, counsel did raise this issue on appeal. Appellate counsel argued that this Court abused its discretion when it refused to give Gassew's supplemental interstate commerce instruction. The Third Circuit found that Gassew's requested jury instruction "lacks any pertinent authority, and ... Gassew cites no authority related to the Hobbs Act to support his theory that the goods lost their interstate character upon arriving in Pennsylvania, and this Court has never made this finding." *Gas-*

*sew,* 519 Fed.Appx. at 768. Thus, the Third Circuit held that the District Court did not abuse its discretion in rejecting Gassew's supplemental jury instruction.

 Because appellate counsel argued on appeal that the supplemental jury instruction should have been given to the jury, he did not render deficient performance by failing to raise this issue. Additionally, Gassew has suffered no prejudice because the Third Circuit concluded on appeal that Gassew's supplemental jury instruction is legally incorrect. Moreover, Gassew cannot use his habeas petition to relitigate the question of whether this Court erred in failing to submit his supplemental jury instruction to the jury because it was raised and considered on appeal. *United States v. DeRewal,* 10 F.3d 100, 105 n. 4 (3d Cir.1993) ("Section 2255 generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" (quoting *Barton v. United States,* 791 F.2d 265, 267 (2d Cir.1986))). Therefore, I will deny Gassew's claim for ineffective assistance of counsel on this basis.

### E. Brandishing a Firearm

Gassew claims that appellate counsel rendered ineffective assistance of counsel by failing to challenge the judicial finding that Gassew brandished a firearm, which increased his mandatory minimum sentence. Gassew was convicted of two counts (Counts Two and Six) of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1). At trial, the jury was not charged with determining whether Gassew had brandished his firearm during the commission of either robbery. At sentencing, however, this Court found that Gassew had brandished a firearm during the commission of both crimes. This judicial finding resulted in an increased mandatory minimum sen-

tence pursuant to 18 U.S.C. § 924(c)(1)(A)(ii).[6] Gassew claims that appellate counsel should have argued that this judicial fact-finding violated the Constitution because it increased his mandatory minimum sentence.

In *Harris v. United States*, the Supreme Court held that a judicial determination that a defendant had brandished a firearm pursuant to 18 U.S.C. § 924(c)(1)(A)(ii) was constitutional, even though it raised a defendant's statutory minimum, and need not be "submitted to the jury, or proved beyond a reasonable doubt." 536 U.S. 545, 568–69, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). In *Alleyne v. United States*, the Supreme Court explicitly overruled its decision in *Harris*, and held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury" and proved beyond a reasonable doubt. —— U.S. ——, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013). The Supreme Court decided *Alleyne* on June 17, 2013.

▮▮▮▮▮ At the time the Third Circuit decided Gassew's appeal, on March 12, 2013, *Harris* was still good law and was controlling precedent. If appellate counsel had raised the brandishing issue on appeal, the Third Circuit would have rejected counsel's argument because it was bound to follow the precedent established in *Harris*. Thus, Gassew suffered no prejudice from counsel's failure to raise the issue. Therefore, I will deny Gassew's claim for ineffective assistance of counsel on this basis.[7]

## F. Downward Departure

At sentencing, counsel moved for a downward departure to Gassew's sentence on the basis of Gassew's physical condition pursuant to U.S.S.G. § 5H1.4,[8] or pursuant

---

**6.** A conviction for using or carrying a firearm in relation to a crime of violence carries a five-year mandatory minimum sentence, 18 U.S.C. § 924(c)(1)(A)(i), that increases to a seven-year mandatory minimum sentence "if the firearm is brandished." 18 U.S.C. § 924(c)(1)(A)(ii). Gassew's mandatory minimum sentence for Count Two was increased from 5 years to 7 years because this Court found that he had brandished a firearm. His mandatory minimum sentence for Count Six, however, was not increased based on the finding that he had brandished a firearm because it was a second conviction under this subsection that carried a 25–year mandatory minimum sentence pursuant to 18 U.S.C. § 924(c)(1)(C)(i).

**7.** On June 4, 2013, Appellate counsel filed a petition for writ of certiorari before the Supreme Court. The Supreme Court decided *Alleyne* while the petition for writ of certiorari was pending before the Supreme Court. It is unclear whether Gassew is arguing that counsel was also ineffective for failing to amend the petition for writ of certiorari to include the brandishing issue. However, there is no constitutional right to counsel with respect to certiorari review before the Supreme Court. *Wainwright v. Torna*, 455 U.S. 586, 587, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). Because there is no right to counsel for a certiorari petition, a defendant cannot raise an ineffective assistance of counsel claim for such a petition. *Id.* at 587–88, 102 S.Ct. 1300; *Pena v. United States*, 534 F.3d 92, 95 (2d Cir. 2008).

To the extent that Gassew seeks relief directly on the basis of the Supreme Court's holding in *Alleyne*, his claim is also denied because "*Alleyne* cannot be applied retroactively to cases on collateral review." *United States v. Winkelman*, 746 F.3d 134, 136 (3d Cir.2014); *see also United States v. Reyes*, 755 F.3d 210, 212 (3d Cir.2014).

**8.** Section 5H1.4, in relevant part, provides:

Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention

to the fact that Gassew was shot by the police during the commission of his crimes. Gassew alleges that appellate counsel was ineffective for failing to argue on appeal that the Court did not rule on the motion for downward departure. This claim is meritless because the Court denied Gassew's motion for downward departure at sentencing. Specifically, the Court stated: "I'm not departing ... because he was shot or that his physical condition was not good." Tr. 3/15/12 at 35:1–3. Therefore, I will deny Gassew's claim for ineffective assistance of counsel on this basis.

### G. Additional Issues on Appeal

Lastly, Gassew alleges that appellate counsel was ineffective for failing to raise the additional issues that Gassew now raises in this habeas petition. As discussed in the previous sections, these additional claims would not have succeeded on appeal. Therefore, Gassew was not prejudiced by counsel's failure to raise them. I will deny Gassew's claim for ineffective assistance of counsel on this basis.

### IV. CONCLUSION

█ For the reasons set forth above, I will deny Gassew's pro se Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. A certificate of appealability will not issue.[9]

### ORDER

**AND NOW,** this 21st day of August, 2014, it is **ORDERED** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 184) is **DENIED.** A certificate of appealability will not issue.[10]

---

may be as efficient as, and less costly than, imprisonment.
U.S.S.G. § 5H1.4.

**9.** Under AEDPA, a certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Gassew has not shown that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong.

**10.** Under AEDPA, a certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Gassew has not shown that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong.