UNITED STATES of America,
Plaintiff,

v.

Kurt William HAVELOCK, Defendant.

No. CR 08–116–PHX–ROS.

United States District Court,
D. Arizona.

June 12, 2008.

Jeffrey Allen Williams, Federal Public Defenders Office, Phoenix, AZ, for Defendant.

Michael Thomas Morrissey, U.S. Attorney's Office, Phoenix, AZ, for Plaintiff.

**ORDER**

Before the Court is Defendant Kurt William Havelock's Motion to Dismiss the Superceding Indictment. For the reasons stated herein, this motion will be granted in part and denied in part.

**BACKGROUND**

On or about January 30, 2008, Havelock purchased an AR–15 semi-automatic rifle and ammunition at the Scottsdale Gun Club located at 14860 North Insight Boulevard, Scottsdale, Arizona. The rifle was manufactured in Maine, and the ammunition was manufactured in Brazil. He allegedly purchased the rifle with the intent to injure or kill persons attending Super Bowl XLII on Sunday, February 3, 2008, in Glendale, Arizona.

On February 3, 2008, Havelock wrote a letter allegedly threatening to injure the children and persons in the vicinity of the Super Bowl, and mailed eight copies to various media companies from the United States Post Office located at 59th Avenue and Peoria Avenue in Glendale, Arizona. He then, with the AR–15 in the trunk of his vehicle, drove to the University of Phoenix Stadium, the location of the Super Bowl.

Havelock had a change of heart, informed the Tempe Police Department of his actions, and surrendered his weapon. He was arrested by federal authorities on February 4, 2008, and charged with a single count of violating 18 U.S.C. § 876(c).

On February 19, 2008, an indictment was filed charging Havelock with six counts of violating 18 U.S.C. § 876(c). On April 1, 2008, a superceding indictment was filed, which added two counts to the indictment of violating 18 U.S.C. § 924(b).

**ANALYSIS**

Havelock has moved to dismiss the superceding indictment pursuant to Federal Rule of Criminal Procedure 7(c) and the Speedy Trial Act.

**I. Federal Rule of Criminal Procedure 7(c)**

Havelock challenges the sufficiency of the superceding indictment under Federal Rule of Criminal Procedure Rule 7(c) on the grounds that: (1) the envelopes sent were not addressed to a "person" within the meaning of 18 U.S.C. § 876(c); (2) he did not receive a gun in interstate commerce as required by 18 U.S.C. § 924(b); and (3) his letters did not contain true threats.

A. *Under 18 U.S.C. § 876(c), the Jury Can Examine the Envelope and the Letter's Contents In Order to Determine If the Communication Is "Addressed To" a Natural Person.*

Havelock argues that the indictment is legally insufficient because the envelopes directed delivery to various media corporations rather than a natural person. Whether Section 876(c) constrains the trier of fact to examine only the envelope or allows consideration of the contents of the communication in order to determine who

a communication is "addressed to" is an issue of first impression for this Court.[1]

In support of his argument, Havelock relies upon *United States v. Brownfield,* 130 F.Supp.2d 1177 (C.D.Cal.2001). In *Brownfield,* the defendant mailed a communication via the post office that stated "Federal Bureau of Investigation, 901 Civic Center Drive, Santa Ana, CA 92701" on the envelope, and contained a threat to murder the person Moon Unit Zappa. *Id.* at 1178–79. The court held that, because the envelope directed delivery to the Federal Bureau of Investigation, which was not a natural person, the communication was not "addressed to" a "person" as required by Section 876(c).

■ As an initial matter, the Court agrees with the *Brownfield* court that the communication must be addressed to a natural person, not a corporation. *Brownfield,* 130 F.Supp.2d at 1181. While generally the word "person" includes corporations, see Dictionary Act, 1 U.S.C. § 1; *Monell v. Dep't of Social Serv. of City of New York,* 436 U.S. 658, 687, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978), Section 876(c) prohibits threats to kidnap or injure the *"person* of the addressee." This language "denotes the physical body of a person," and "corporations cannot be understood to have physical bodies." *Brownfield,* 130 F.Supp.2d at 1180–81. Thus, the context of Section 876(c) demonstrates that "person" means a natural person.

That said, the Court must still determine the meaning of "addressed to," and this is where it parts company with the *Brownfield* court. In *United States v. Williams,* the Tenth Circuit considered threatening communications whose envel-

opes directed delivery to a governmental agency but whose content, and in particular, the salutations were arguably addressed to natural persons. 376 F.3d 1048, 1051 n. 2 (10th Cir.2004). The court held that Section 876 allows consideration of, at a minimum, the envelope and the salutation of a letter to determine who the communication was "addressed to." *Id.* at 1052; *see also United States v. Chapman,* 440 F.Supp. 1269, 1270 (E.D.Wis.1977) (holding that "a threatening letter is 'addressed' to a person within the meaning of [Section] 876 if the letter itself is directed to the attention of specific person, even though the delivery instructions direct that the mail carrier deliver the letter to an institution"). In support of this holding, the court examined the definition of "address," and found that it did not exclude the salutation of the letter. *Id.* The court also noted "Section 876 proscribes the mailing of a threatening *communication* which is 'addressed to any other person,'" and "[t]he word 'communication' includes the contents of a letter." *Id.* (collecting sources) (emphasis in original).

The Court finds the reasoning of the *Williams* court persuasive, and, while *Williams* specifically focused on the salutation of a letter, there is no reason to limit the decision to the salutation, as opposed to the letter's general contents. First, the definition of "address" includes "to direct the words of (oneself)" and "to speak, write, or otherwise communicate directly to." Webster's Third New International Dictionary 24 (2002). This definition of "address" indicates that one may consider the contents of a letter generally. And, as the Tenth Circuit noted, the word "com-

---

1. Section 876(c) provides:
 Whoever knowingly so deposits or causes to be delivered [to any post office or authorized depository for mail], any communication with or without a name or designating mark subscribed thereto, *addressed to any*

*other person* and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.
18 U.S.C. § 876(c) (emphasis added).

munication" includes the contents of a letter, not just its salutation.

Further, the purpose of Section 876 would be frustrated if someone could avoid prosecution by merely addressing a threatening communication to a media corporation even though the content of a communication was meant to threaten persons. In light of recent events, a reasonable jury could conclude that persons engaged in or planning to engage in random shootings or mass murders hope to gain the attention of the public through the media by communicating threats to do so. In addition, a reasonable jury could conclude that a defendant intended to use the media as the agent for communicating the threat to intended victims. It is commonly understood that the media is in the business of communicating and has an obligation to communicate to the public. No reasonable person would think that when the media received such a communication it would ignore it. Of course the jury on these facts might conclude otherwise. Significantly, it is here, and generally always is, the exclusive province of the jury to parse through the facts and make these exquisite evaluations.

Thus, when the jury determines who a communication is "addressed to" for purposes of Section 876(c), it may consider the both the envelope and the letter's contents.

B. *Movement of a Firearm Across State Lines at a Time Removed from Havelock's Receipt Does Not Satisfy 18 U.S.C. § 924(b)'s Interstate–Commerce Requirement.*

 Because Havelock's receipt of the firearm was entirely intrastate in nature,

he asserts that the government cannot satisfy Section 924(b)'s interstate-commerce requirement.[2] The government's position is receipt of a firearm that previously traveled in interstate commerce, no matter how far removed from a defendant's receipt, is sufficient. The scope of Section 924(b)'s interstate-commerce requirement is an issue of first impression.

"A familiar principle of statutory construction [ ] is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld,* 548 U.S. 557, 126 S.Ct. 2749, 2765, 165 L.Ed.2d 723 (2006); *see also Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation marks omitted).

Sections 922(f) and 924(b) were enacted as part of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351 (1968). In Section 922(f), Congress forbade anyone who was under indictment or a convicted felon "to receive any firearm or ammunition which *has been* shipped or transported in interstate or foreign commerce" (emphasis added). In *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976),[3]

2. Section 924(b) provides:
 Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition *in interstate or foreign commerce* shall be fined under this

 title, or imprisoned not more than ten years, or both.
 18 U.S.C. § 924(b) (emphasis added).

3. In *Barrett,* the Supreme Court considered the Gun Control Act of 1968, which was "a substantially identical version of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968." 423 U.S. at 219–20, 96 S.Ct. 498. For ease, when discussing *Barrett,* the provisions from the Gun Control Act are sub-

the Supreme Court held that this phrase "means exactly what it says," that there is "no limitation to a receipt which itself is part of the interstate movement." *Id.* at 216, 96 S.Ct. 498. The Court also noted that "while the proscribed act, 'to receive any firearm,' is in the present tense, the interstate commerce reference is in the present perfect tense, denoting an act that has been completed." *Id.*

In contrast, in Section 924(b), Congress did not include the phrase "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," but rather used *"in* interstate or foreign commerce" (emphasis added).[4] Unlike Section 922(f), the proscribed act and the interstate-commerce reference are in the present tense, denoting that the acts are contemporaneous. Indeed, the Supreme Court recognized in *Barrett* that the exact same phrase in another section of Title IV, Section 922(i), meant that Congress intended to limit the offense to receipt which itself was part of the interstate movement. 423 U.S. at 217, 96 S.Ct. 498 ("Had Congress intended to confine [Section 922(f) ] to direct interstate receipt, it would have so provided, just as it did in other sections of the [Act]." (citing Section 922(i) (prohibiting the receipt "in interstate or foreign commerce" of a firearm the serial number of which has been removed))). If Congress had intended Section 924(b) to reach firearms no matter how far removed from a defendant's receipt, it would have so provided, just as it did in Section 922(f). *See id.* at 217, 96 S.Ct. 498; *Scarborough v. United States,* 431 U.S. 563, 570, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) ("Title IV[ ] is a carefully constructed package of gun control legislation. It is obvious that the tenses used throughout Title IV were chosen with care.").

Because Congress specified when an offense was based on firearms that previously traveled in interstate commerce but omitted the same in Section 924(b), it is presumed that Congress purposely intended to limit Section 924(b) to direct interstate receipt. *See Sosa v. Alvarez–Machain,* 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

The legislative history further supports the view that Congress sought to limit Section 924(b)'s scope to direct interstate receipt of firearms. For example, the Senate found:

> Two prime sources of firearms to ... crime-bent individuals which involve access to guns through interstate routes are the mail-order common carrier source and the out-of-State, nonresident source.... As an example of this, the Massachusetts authorities have testified that 87 percent of 4,506 crime guns misused in that State were purchased outside of Massachusetts in neighboring States. The result is that their stringent controls which are applicable to the sale of firearms and primarily handguns, are considerably reduced in effectiveness.

The prosecuting attorney of Wayne County, Mich., which includes the city of Detroit, testified that 90 out of every 100 crime guns confiscated in Detroit are not purchased and registered in Michigan and that the prime source of these

---

stituted with those of the Omnibus Crime Control and Safe Streets Act.

**4.** Section 924(b) has essentially been unchanged since its enactment in 1968: Pub.L.

No. 103–322 (1994) substituted "under this title" for "not more than $10,000"; and Pub.L. No. 90–618 (1968) added "or any ammunition" following "a firearm."

crime guns is by purchases in neighboring Ohio, where controls on firearms are minimal.

S.Rep. No. 90–1097, *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2163–64.

In contrast, there is little support in the legislative history for the government's proposed interpretation. Criminalizing the receipt of a firearm that at any time moved in interstate commerce no matter how far removed from a defendant's actual receipt would make a federal crime out of virtually every crime involving a gun as long as the defendant received the firearm sometime shortly before the crime was committed.[5] Not only would such a statute likely be unconstitutional, *see generally United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Court declines the invitation to extend federal jurisdiction so expansively without a clear indication of Congress's intent. *See Whitman v. Am. Trucking Assoc.*, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001) (Congress does not "hide elephants in mouseholes.").

■ Despite the language of the statute and its legislative history, the government asserts that *United States v. Metzger*, 778 F.2d 1195 (6th Cir.1985), requires the Court to interpret Section 924(b) to include firearms that previously moved in interstate commerce. This argument is not persuasive. In *Metzger*, the Sixth Circuit interpreted 18 U.S.C. § 844(d)'s interstate-commerce requirement.[6] 778 F.2d at 1207. Section 844(d), however, was enacted as part of Title XI of the Organized Crime Control Act of 1970, Pub.L. No. 91–452 (1970). When two provisions are not considered or enacted together, the presumption that Congress intended the same meaning by using the same phrase is reduced. *See Gomez–Perez v. Potter*, —— U.S. ——, 128 S.Ct. 1931, 1936, 170 L.Ed.2d 887 (2008).

Moreover, based on the facts in *Metzger*, the court found that it was reasonable for the jury to conclude that the movement of the explosive was a "continuation of the movement that began out of state." 778 F.2d at 1207. Significantly, such a finding indicates the Sixth Circuit required some contemporaneous link to interstate commerce, albeit attenuated. In addition, the facts in this case demonstrate that Havelock's receipt of the firearm was not a continuation of its movement from out of state. Rather, the firearm's interstate movement had ceased prior to Havelock's receipt of it. Thus, *Metzger* is distinguishable.

■ To the extent that doubt nonetheless persists about Section 924(b)'s intended scope, the rule of lenity requires the Court to interpret it narrowly. *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990). Although "federal gun laws are to be given their broadest permissible application," *United States v. Cruz*, 50 F.3d 714, 718 (9th Cir.1995), "because construction of a criminal statute must be guided by the need for fair warning," the rule of lenity still applies, *id.* at 719 (applying the rule of

---

**5.** For example, each time a defendant purchases a firearm in contemplation of robbing a convenience store, he will have committed a federal offense if he completes the robbery.

**6.** Section 844(d) provides in relevant part:
 Whoever transports or receives, or attempts to transport or receive, *in interstate or foreign commerce* any explosive with the knowledge or intent that it will be used to

kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be imprisoned ...; and if death results, shall be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

*18* U.S.C. 844(d) (emphasis added).

lenity to 18 U.S.C. § 922(j), which was originally enacted as Section 922(h) of Title IV of the Omnibus Crime Control and Safe Streets Act of 1968). This rule requires the Court, when confronted with two rational readings of a criminal statute, one harsher than the other, to choose the harsher only when Congress has spoken in clear and definite language. *Pasquantino v. United States*, 544 U.S. 349, 383, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005). Congress has not so spoken here. Therefore, the rule of lenity requires the Court to narrowly interpret Section 924(b), and to limit it to only direct interstate receipt of a firearm.

Based on Section 924(b)'s plain language, legislative history, and principles of statutory construction, because Havelock's receipt of the firearm was completely intrastate in nature, the Section 924(b) counts against him shall be dismissed.

### C. *Whether the Letters Are True Threats Is a Factual Question for the Jury.*

Havelock also argues there is insufficient evidence that the letters were truly threatening. First, he asserts, examining the whole communication, the letters are an attempt to explain conduct that did not come to fruition, not an expression of future conduct. The letters, however, contain expressions that denote future conduct, such as: "I will take as many [lives] of the baneful and ruinous ones with me"; "I will slay your children"; "I will shed the blood of the innocent"; "I will test the theory that bullets speak louder than words." Thus, while the letter may be interpreted as merely an explanation of

past events rather than of future conduct, the Court declines to rule as a matter of law that the letters do not contain threats of future conduct. *See United States v. Davila*, 461 F.3d 298, 304 (2d Cir.2006) (For purposes of Section 876, whether a letter constitutes a true threat is generally a question of fact for the jury.); *United States v. Matthews*, 431 F.3d 1296, 1310 (11th Cir.2005) (same); *United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995) (same); *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir.1990) (same); *Martin v. United States*, 691 F.2d 1235, 1240 (8th Cir.1982) (same); *United States v. Maisonet*, 484 F.2d 1356, 1358 (4th Cir. 1973) (same); *cf. United States v. Merrill*, 746 F.2d 458 (9th Cir.1984) ("Whether any given form of written or oral expression constitutes a true threat for purposes of [Section 871, mailing threats against the President,] is a question for the trier of fact under all of the circumstances.").

Second, Havelock asserts that the fact that he mailed the letters on Super–Bowl Sunday, and mail is not delivered on Sundays, demonstrates a lack of subjective intent of the letters as a threat.[7] Again, the Court finds that this is a question of fact for the jury.

### II. Speerd Trial Act

■ Under the Speedy Trial Act, the government must indict a defendant on the charges alleged in the criminal complaint within thirty days. 18 U. SC. § 3161(b). If an indictment is not filed within this 30–day time limit, the complaint must be dismissed. 18 U.SC. § 3162(a)(1).

---

7. Whether an objective or subjective test is used to determine if a communication constitutes a true threat is not settled law in the Ninth Circuit, *see United States v. Sutcliffe*, 505 F.3d 944, 961–62 (9th Cir.2007) (recognizing conflict in Ninth Circuit case law); *United States v. Stewart*, 420 F.3d 1007, 1016–

18 (9th Cir.2005) (same), although other circuits apply an objective test, *see United States v. Davila*, 461 F.3d 298, 304–05 (2d Cir.2006); *United States v. Koski*, 424 F.3d 812, 817 (8th Cir.2005); *United States v. Fuller*, 387 F.3d 643, 646 (7th Cir.2004); *United States v. Zavrel*, 384 F.3d 130, 136 (3d Cir.2004).

Havelock moves to dismiss the superceding indictment because it was filed fifty-seven days after his federal arrest. Havelock, however, was timely indicted on the charge for which he was arrested, and the original indictment tolled the thirty-day time period. *See United States v. Carrasco,* 257 F.3d 1045, 1052 (9th Cir. 2001). "Therefore, the superseding indictment, which was issued while the original indictment was pending and which reasserted the same charge, was timely." *Id.* Moreover, "[c]harges not included in the original complaint are not covered by the Act." *United States v. Heldt,* 745 F.2d 1275, 1280 (9th Cir.1984).

There was no violation of the Speedy Trial Act.

Accordingly,

**IT IS ORDERED** that Defendant Havelock's Motion (Doc. 24) is **GRANTED IN PART and DENIED IN PART.**