# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1754

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Miles Sullivan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: December 13, 2012
Filed: May 20, 2013

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Stephen Miles Sullivan was convicted by a jury of possession with intent to distribute a controlled substance analogue in violation of 21 U.S.C. §§ 802(32)(A),

813, and 841(a)(1)(C). The district court[1] sentenced Sullivan to 92 months of incarceration. Sullivan now appeals his conviction. We affirm.

I

After police seized powder containing 4-methylmethcathinone (mephedrone) from Sullivan's vehicle during a traffic stop, the government charged Sullivan with possession with intent to distribute a controlled substance analogue.

At trial, Officer Jason Parsons, who had arrested Sullivan, testified about the stop. According to Parsons, he had asked during the stop if there was anything illegal in the vehicle and Sullivan had responded that the vehicle contained bath powder. Trial Tr. 183. During a subsequent search of the vehicle, Parsons had seized, among other things, a 3"x5" plastic bag containing 397 grams of a white powder, 100 2"x2" sealable plastic bags, and sheets of two different kinds of labels corresponding to the size of the small plastic bags. Id. at 190-94. Pictures of the labels were submitted into evidence. See Appellee's Add. 4, 5. The text on the first type of label read "Experience the Bliss . . . Deluxe Bath Powder." Id. at 4. The text on the second read "Pour 100 - 200 mg into Hot Bath. Kick back and Enjoy. Do not use more than ½ pack per bath. Experience the Bliss . . . . Products not for human consumption. Keep out of reach of children. Distributors not responsible for misuse of product." Id. at 5.

The white power contained mephedrone, a chemical analogue of methcathinone. Trial Tr. 48. Methcathinone was at the time of the arrest and remains

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

a Schedule I controlled substance.[2]  Id.  At the time of the arrest, Nebraska state law did not prohibit the sale of mephedrone.  Id. at 148.  Mephedrone was, however, illegal at the time as a controlled substance analogue under the Controlled Substance Analogue Enforcement Act (CSAEA) to the extent distributors intended it for human consumption.  Id. at 40, 53, 90.

At trial, Drug Enforcement Agency (DEA) unit chief Liqun Wong testified about the DEA's knowledge regarding mephedrone.  According to Wong, at the time of the arrest, mephedrone had been an emerging drug which was widely distributed and abused on the illicit market.  Id. at 50.  Distributors purchased powder containing mephedrone in bulk and repackaged it into ready-to-use packages.  Id. at 51.  The packages were misleadingly labeled as bath salts and commonly sold in head shops.[3]  Id.  According to Wong, "no one" had purchased the mephedrone powder with the intent of using it in baths.  Id. at 52.  People consumed the mephedrone powder to obtain a pharmacological "high."  Id. at 49.

Wong also testified that even though mephedrone powder had been sold labeled as bath salts, the packaging indicated the powder had not been intended for use in baths.  Id. at 52.  Labeling on mephedrone powder packages indicated the user could obtain a legal "high."  Id.  In addition, manufacturers had not been required to list the ingredients of mephedrone powder on the package label.  Id. at 42.

Officer Christopher Vigil, an undercover narcotics officer, also testified.  According to Vigil, the Lincoln Police Department had received information that increasing numbers of people were ingesting bath salts to obtain a pharmacological

[2]Approximately a year after the arrest, the Drug Enforcement Agency classified mephedrone itself as a Schedule I controlled substance.  Trial Tr. 40.

[3]Head shops are retail stores which primarily sell tobacco and smoking accessories.  Trial Tr. 139.

"high." Id. at 141. Vigil had investigated the sale of bath salts in head shops in the Lincoln area. Id. The head shops sold two types of products labeled as bath salts, large crystals and white powders. Id. at 141-42. Vigil believed the powder bath salts were being consumed to obtain a pharmacological "high." Id. at 141. The head shops sold the powder bath salts in 2"x2" sealable plastic bags bearing vague labels which did not list the ingredients of the contents. Id. at 142, 147.

The jury ultimately convicted Sullivan and this appeal followed.

II

On appeal, Sullivan challenges the sufficiency of the evidence supporting his conviction. "We review *de novo* challenges to the sufficiency of the evidence." United States v. Wells, 706 F.3d 908, 914 (8th Cir. 2013) (citing United States v. Espinoza, 684 F.3d 766, 776 (8th Cir. 2012)). "We 'view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence.'" United States v. Van Nguyen, 602 F.3d 886, 897 (8th Cir. 2010) (quoting United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006)). "We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Wells, 706 F.3d at 914 (quoting United States v. Yang, 603 F.3d 1024, 1026 (8th Cir. 2010)).

To convict Sullivan of possession of a controlled substance analogue with intent to distribute, the jury was required to find (1) Sullivan possessed mephedrone, a controlled substance analogue, (2) Sullivan knew he was in possession of a controlled substance analogue, and (3) Sullivan intended to distribute some or all of the controlled substance analogue for human consumption. Appellee's Add. 6. Sullivan does not challenge the sufficiency of the evidence that mephedrone was a controlled substance analogue, that he possessed it, or that he intended to distribute it.

Sullivan contends the evidence was insufficient to prove he knew mephedrone was a controlled substance analogue. Sullivan argues it was impossible for him to have known mephedrone was a controlled substance analogue at the time he was arrested because the DEA had not yet classified it as a controlled substance analogue.[4] The CSAEA does not, however, require the DEA to classify a substance as a controlled substance analogue before the substance falls under its purview. See 21 U.S.C. §§ 802(32)(A), 813.

A reasonable juror could find Sullivan knew he was in possession of a controlled substance analogue. When Parsons asked Sullivan whether the vehicle contained anything illegal, Sullivan told him the vehicle contained bath powder. Trial Tr. 183. At the time of the arrest, the mephedrone in the powder was illegal only under the CSAEA as a controlled substance analogue. Id. at 40, 53, 90. Accordingly, Sullivan indicating the bath powder was illegal supports a reasonable inference he knew the powder contained a controlled substance analogue.

Sullivan also contends the evidence was insufficient to prove he intended the mephedrone for human consumption, arguing the labels stated the bath powder was not for human consumption. A label indicating a substance is not for human consumption is not dispositive evidence of the distributor's intent. See United States v. Washam, 312 F.3d 926, 930 (8th Cir. 2002) (affirming a conviction for distributing a controlled substance analogue even though the label on the analogue said not to

_____

[4]In support of his position, Sullivan urges us to focus on evidence that, like the DEA's lack of knowledge about mephedrone at the time of arrest, merely weighs against finding he knew mephedrone was a controlled substance analogue or that he intended it for human consumption. In reviewing the sufficiency of the evidence, however, this "court does not weigh the evidence or the credibility of the witnesses." United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010) (citing United States v. Honarvar, 477 F.3d 999, 1000 (8th Cir. 2007)).

ingest it, where there were other indicators the defendant intended the analogue for human consumption).

Sullivan indicating to Parsons the bath powder was illegal also supports a reasonable inference he intended the powder for human consumption. As discussed above, at the time of Sullivan's arrest, the mephedrone in the powder was illegal only under the CSAEA as a controlled substance analogue. However, the CSAEA expressly excludes substances to the extent the substances are not intended for human consumption. 21 U.S.C. § 802(32)(C)(iv). Accordingly, had Sullivan not intended the mephedrone powder to be for human consumption, it would not have been illegal under any law in effect at the time.

The labels seized from Sullivan's vehicle also support the inference. The labels advertised a feeling of bliss from using the mephedrone powder and did not contain a list of ingredients. See Appellee's Add. 5. As such, the labels bore significant similarities to those described by Wong as being on packages of mephedrone powder purchased for human consumption. The labels also bore significant similarities to those described by Vigil as being on packages which, in his opinion, were being purchased for human consumption.

Based on the foregoing, we cannot conclude that no reasonable jury could have found Sullivan guilty beyond a reasonable doubt.

III

We therefore affirm the judgment of conviction.

_____