# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1630

_____

United States of America

*Plaintiff - Appellee*

v.

Lorena Morales

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: October 23, 2015
Filed: February 10, 2016

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

Lorena Morales was convicted by a jury of one count of conspiracy to knowingly distribute a controlled substance and one count of possession with intent to distribute methamphetamine. The district court[1] sentenced Morales to 120 months

_____

[1]The Honorable John A. Jarvey, Chief Judge for the United States District Court for the Southern District of Iowa.

of imprisonment, the mandatory minimum. Morales challenges the sufficiency of the evidence and alleges various government misconduct and district court errors. We affirm.

I

On March 26, 2014, a two-count indictment was filed charging Morales and two co-defendants with conspiracy to distribute methamphetamine (Count I) and possession with intent to distribute methamphetamine (Count II). Morales's two co-defendants, Melissa Gallardo and Mario Borboa, each reached plea agreements with the government. Gallardo entered into a plea agreement on July 11, 2014, wherein she pleaded guilty to Count I of the indictment, the government agreed to dismiss Count II, Gallardo was required to cooperate with the government, and the government acknowledged it might file a substantial assistance motion. Borboa did the same on August 14, 2014. On September 25, 2014, a superseding indictment applicable only to Morales was filed charging Morales, Gallardo, and Borboa with one count of conspiracy to distribute methamphetamine (Count I) in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A), and charging Morales with one count of possession with intent to distribute methamphetamine (Count II) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Morales proceeded to a jury trial in October 2014. The evidence at trial included the following.

At the time of the offense, Lorena Morales was a 21-year-old woman living in Los Angeles, California. Although Morales had previously been employed, by early 2014 Morales was no longer working and began traveling with individuals who were distributing methamphetamine from southern California to other parts of the country. Two of those individuals are her co-defendants in the present matter.

Gallardo testified she made several trips to deliver methamphetamine for Borboa. In early 2014, Gallardo traveled from California to Texas to deliver

methamphetamine to a customer named "Boots." Borboa orchestrated the trip on behalf of someone higher up. Gallardo delivered methamphetamine to Boots, collected money from Boots and from other drug customers, and was paid $5,000 by Borboa for her services. A couple of weeks after this first trip, Gallardo made a second trip for Borboa, this time from Los Angeles to San Diego, California, and was paid $250.

Borboa testified about Morales's first drug delivery. In February 2014, Borboa and Morales traveled to Killeen, Texas, for the purpose of delivering methamphetamine. Borboa testified that after arriving in Texas, he and Morales visited Boots, who, in front of Morales, unpacked methamphetamine from Borboa's car and counted out money for Borboa, which was partial payment for the methamphetamine. Borboa paid for Morales's expenses during the trip and also gave her a couple hundred dollars in cash. After Morales returned to California, she texted Borboa asking when payment would be forthcoming. Borboa then deposited $1,000 into Morales's bank account. Morales testified she was unaware Borboa engaged in drug trafficking and went to Texas with Borboa because she wanted to visit a friend in El Paso.

Morales participated in a second delivery a few weeks later, which forms the basis of the charged conduct in this case. Borboa testified that he arranged, via text message, for Morales and Gallardo to bring methamphetamine from California to Iowa, but ultimately Borboa decided to go on the trip as well. Borboa testified that on February 26, 2014, Morales, driving her own car, picked up Borboa in California. Before the trip, Borboa had packaged the methamphetamine in heat-sealed packages and added ground pepper to avoid detection by dogs. Borboa admitted he filled the duffle bag with the methamphetamine and placed the duffle bag in Morales's trunk. Borboa and Morales then picked up Gallardo, and the three took turns driving the vehicle to Iowa. Gallardo testified that during the drive to Iowa, Borboa, Morales, and Gallardo discussed the location of the delivery, and planned for Borboa and

Morales to return immediately to California with half the drug proceeds while Gallardo would stay behind to collect the other half. Morales testified she agreed to go on the trip because she would see a new part of the country and looked forward to attending a car show in Iowa. Morales also testified she still had no knowledge that Borboa and Gallardo engaged in drug trafficking.

Aaron Taylor, a trooper with the Iowa State Patrol, testified about the traffic stop which occurred on February 27, 2014. As the three co-defendants were driving through Cass County, Iowa, Trooper Taylor stopped their car for speeding. Morales was driving the vehicle and was traveling five miles over the speed limit. Gallardo testified that when Trooper Taylor pulled the vehicle over, Borboa instructed Morales and Gallardo to tell the false story that the group was traveling to an antique car show. During the stop, Morales advised Trooper Taylor they were going to a car show in Iowa, but could not recall Gallardo's surname or the name of the city they were traveling to. Morales told Trooper Taylor Borboa was her co-worker at a print shop, and while Morales admitted recently traveling to Texas, she denied going to Texas with Borboa. Trooper Taylor thought Morales appeared more nervous than a normal person subject to a traffic stop and noted Morales continued to get more nervous as the stop continued.

Trooper Taylor and other officers ultimately searched Morales's car, and Trooper Taylor smelled a strong odor of pepper, along with perfumes, air fresheners, and Febreze. A K-9 was deployed on the vehicle and indicated to the presence of drugs. A search of the vehicle revealed a duffle bag in the trunk, which contained six kilograms of ice methamphetamine with an approximate street value of at least $368,000. After the officers found the duffle bag, they arrested all three co-defendants.

After hearing this and other testimony, the jury convicted Morales of both counts.

A presentence report ("PSR") was prepared, which calculated a total offense level of 34, based in part on a two-level reduction for being only a minor participant, and a two-level increase for obstruction of justice. The PSR calculated a criminal history category of I, yielding a guideline range of 151 to 188 months of imprisonment. At sentencing, Morales asked for a minimal participant adjustment, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3B1.2(a) (2014), which the district court declined to provide. Morales also sought a downward variance pursuant to 18 U.S.C. § 3553(a), and both Morales and the government asked for the mandatory minimum sentence of 120 months. The district court discussed the § 3553(a) factors, varied downward, and sentenced Morales to 120 months of imprisonment.

After sentencing, Morales retained new counsel who filed and briefed the present appeal.

## II

Morales appeals her conviction and sentence alleging various errors. Morales argues: (1) the government failed to meet its burden of proof; (2) the government caused unfair prejudice by filing the superseding indictment; (3) the government made inappropriate remarks during closing arguments; (4) the district court caused the jury to be composed of biased members; and (5) the district court erred in imposition of Morales's sentence.

## A

Morales challenges the sufficiency of the evidence to support her convictions. In criminal appeals, we review challenges to the sufficiency of the evidence de novo. United States v. Sullivan, 714 F.3d 1104, 1107 (8th Cir. 2013). "We view the evidence in the light most favorable to the guilty verdict, granting all reasonable

-5-

inferences that are supported by that evidence." Id. "We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (quoting United States v. Wells, 706 F.3d 908, 914 (8th Cir. 2013)).

To convict an individual of conspiracy to distribute a controlled substance under 21 U.S.C. § 846, "the Government must prove that (1) a conspiracy to distribute methamphetamine existed; (2) the defendant knew about the conspiracy; and (3) the defendant knowingly became a part of the conspiracy." United States v. Garcia, 646 F.3d 1061, 1066 (8th Cir. 2011). Morales argues she could not be found guilty because her co-defendants were more culpable than she was. However, even individuals with limited roles in a conspiracy are considered principals under federal law, 18 U.S.C. § 2, and the government does not need to show a conspirator knew everything about a planned crime, United States v. Garcia, 785 F.2d 214, 225 (8th Cir. 1986) ("The government need not prove that the defendant . . . was aware of all the details [of a conspiracy]."). Accordingly, the government submitted sufficient evidence to support a conviction for conspiracy to distribute methamphetamine.

To convict an individual of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), "the government has the burden of proving beyond a reasonable doubt that [Morales] both knowingly possessed and intended to distribute the drugs." United States v. Parker, 587 F.3d 871, 881 (8th Cir. 2009). Morales challenges the finding she had knowledge of the drugs and intended to distribute the drugs, arguing the testimony of her co-defendants was not credible. "Th[is] argument is inapposite [because] [w]hen reviewing the sufficiency of the evidence, we do not weigh the evidence or the credibility of the witnesses." United States v. Johnson, 745 F.3d 866, 869 (8th Cir. 2014).

Borboa testified he never told Morales they would be transporting methamphetamine, but he had no doubt Morales knew there was a controlled substance in the vehicle and the intent was to distribute the controlled substance in

Iowa. This testimony alone is sufficient evidence of Morales's guilt. First, a defendant does "not need to know the exact nature of the substance in [her] possession, only that it was a controlled substance of some kind." United States v. Martin, 274 F.3d 1208, 1210 (8th Cir. 2001). Second, there is sufficient evidence to uphold a jury verdict "based solely on the testimony of co-conspirators and cooperating witnesses, [because] it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Jefferson, 725 F.3d 829, 834 (8th Cir. 2013).[2]

B

Morales alleges the district court abused its discretion in failing to *sua spone* dismiss the superseding indictment and asks this Court to vacate the superseding indictment pursuant to Federal Rule of Criminal Procedure 7(d). Specifically, Morales argues she was prejudiced because the government filed the superseding indictment omitting her co-defendants from Count II and accordingly making Morales look more culpable than she really was.

_____

[2]As part of arguing the evidence was insufficient to support the convictions, Morales asserts the district court improperly admitted the testimony of Borboa and Gallardo under Federal Rule of Evidence 404(b) because the testimony was unreliable and coerced by the government. Rule 404(b) governs when a court can admit past "crimes, wrongs, or other acts" of a criminal defendant. To the extent Morales argues an evidentiary error because Gallardo and Borboa deliberately misstated the facts or created an incorrect impression for the jury in their testimony about Morales's role, we note co-defendant testimony is a routine part of criminal prosecutions and, contrary to Morales's assertion, the government could properly introduce the co-defendant testimony without the need for Morales's trial attorney to open the door. See Jefferson, 725 F.3d at 834. We also note the jury learned of both plea agreements, and, on cross-examination, Morales's trial attorney attempted to impeach each co-defendant by noting the plea agreements and the possibility of lower sentences. Accordingly, we find no 404(b) evidentiary errors based on the testimony of Gallardo and Borboa.

Federal Rule of Criminal Procedure 7(d) allows a district court, "[u]pon the defendant's motion," to "strike surplusage from the indictment or information." A motion to strike surplusage from an indictment is a matter within the discretion of the district court. United States v. DeRosier, 501 F.3d 888, 897 (8th Cir. 2007). "This Court has cautioned that such a motion 'should be granted only where it is clear [that] the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter.'" Id. (quoting Dranow v. United States, 307 F.2d 545, 558 (8th Cir. 1962)).

Because Morales did not object to the language of the superseding indictment before the district court, we review for plain error. United States v. Lee, 374 F.3d 637, 651 (8th Cir. 2004). "Under plain error review, it is the defendant's burden to prove (1) there was error, (2) that was plain, and (3) affects substantial rights." United States v. Burnette, 518 F.3d 942, 947 (8th Cir. 2008) (citing Johnson v. United States, 520 U.S. 461, 466–67 (1997); Fed. R. Crim. Pro. 52(b)).

Rule 7(d) is not the right vehicle for Morales to challenge the superseding indictment because Rule 7(d) only authorizes the striking of surplusage from an indictment, but does not authorize a district court to include additional language. Rule 7(d)'s purpose is to limit the inclusion of irrelevant or inflammatory facts, not to ensure a complete factual account of the alleged crime. See DeRosier, 501 F.3d at 897. A criminal defendant has certain rights with regard to an indictment, including the Fifth Amendment right to be tried upon charges found by a grand jury and the right to sufficient notice of the offense to bar double jeopardy. United States v. Camp, 541 F.2d 737, 739–40 (8th Cir. 1976) (citing Ex Parte Bain, 121 U.S. 1 (1887)). Federal Rule of Criminal Procedure 12(b)(3)(B) lists five defects which can cause an indictment to be dismissed prior to trial and Rule 7 further governs the use of indictments and provides criminal defendants the right to challenge certain aspects of indictments. Nowhere, however, is a defendant guaranteed the right to an indictment including a full and accurate factual account of the alleged crime. By all

accounts Morales was not the most culpable person; however, the government did not violate the rights of Morales and did not prejudice her by removing the names of her co-defendants (who had previously pleaded guilty to Count I) from Count II of the superseding indictment. Accordingly, Morales has not shown plain error.

C

Morales alleges government misconduct during closing arguments. A review of the closing argument transcript shows trial counsel never objected to the statements at issue. Therefore, plain error review applies. United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001).

Morales first points to the government's discussion of a particular set of text messages exchanged between Borboa and Morales. Morales testified in her own defense, and during her cross-examination the government made the following statement which did not receive a response or further explanation: "So on February 19, 2014, it says—you receive a picture, correct, and that's a picture of Mario [Barboa] holding an infant and it says, you send, 'Awe, and is that prima's adorable little baby?' 'Yup.' 'Tell her I say hi and I want the baby.'" During closing argument, the government brought up these text messages again and said:

> Days before this trip started [Borboa] text messages a picture of himself holding a little baby. We showed that to you and [Morales] texts back is that prima, cousin's, baby? Yes. I think [Morales] says I want to kidnap it or I would like one or whatever, so they're exchanging personal photos, they're taking selfies together in Las Vegas. [Morales] took a picture of [Borboa] in a swimming pool in Killeen, Texas, or somewhere around Killeen, Texas, while she was drinking some alcoholic beverage, and for 15 minutes in that car before those controlled substances were found [Morales] doesn't say a word to [Borboa]. Not even hi. Guilty knowledge, ladies and gentlemen. That's

what that shows. She knew those controlled substances were there. No question about it.

Morales argues the government brought up kidnapping during closing arguments to show Morales was prone to kidnapping a child. Such an interpretation takes the government's comments out of context. Although the only reference to kidnapping the baby, as opposed to wanting the baby, came during closing arguments, it was not plain error for the district court to allow the comment. Read in context of the closing argument, the government was not using the text messages to establish Morales was interested in taking a child which was not hers, but was rather using the messages to establish Morales knew the drugs were in the car. Because the text messages were relevant to Morales's knowledge, the district court did not err in allowing the government to discuss the text messages.

Morales next argues the government committed misconduct in its discussion of Morales's credibility as a witness. During closing argument, the government said:

> Ladies and gentlemen, you are the sole judges of credibility of the witnesses and the Court has so instructed you and that is the way the system works. So in truth, you get to decide because what the defendant testified to this morning, if she's believable, which means she is not guilty, the government would agree with that; but is it truthful? Who has the opportunity to know all the questions? Who sat in the courtroom the last three or four days? Who listened to the witnesses and knew the case the government was putting together? Who really had something to lose here?

Morales contends this statement was prejudicial because it suggested Morales had an improper motive for watching the trial when in fact she had a constitutional right to be present. Supreme Court precedent forecloses this argument. In Portuondo v. Agard, 529 U.S. 61, 69 (2000), the Supreme Court held, in a case with a similar closing argument, a prosecutor may point out to the jury the benefit a defendant has

in testifying: that the defendant has listened to all of the other witnesses and can better piece together a "false" story. Id. at 67-68 ("[I]t *is* natural and irresistible for a jury, in evaluating the relative credibility of a defendant who testifies last, to have in mind and weigh in the balance the fact that he heard the testimony of all those who preceded him."). Morales focuses on Justice Ginsburg's dissent, and argues we should adopt her conclusion that "invit[ing] the jury to convict on a basis of conduct as consistent with innocence as with guilt" is a burden to a criminal defendant's constitutional rights. Id. at 79 (Ginsburg, J., dissenting). When there is controlling Supreme Court precedent, we are bound by that decision and cannot elect to adopt the views of a dissenting Justice. Schwarz v. Witwer Grocer Co., 141 F.2d 341, 343 (8th Cir. 1944). Accordingly, the district court did not err in allowing the government to make this statement during closing argument.

D


Morales asks this Court to remand for a new trial because the jury was improperly empaneled. Morales takes offense with two things. First, Morales argues the jurors admitted onto the petit jury were too pro-police. Second, Morales argues the district court judge improperly demonstrated authority and improper influence over the jurors in the conversations he had during voir dire.

First, Morales now objects, for the first time, to the seating of certain allegedly pro-police jurors on her petit jury. "Because [Morales] admittedly failed to raise this objection during the jury selection process, [s]he has waived the issue, intentionally relinquishing or abandoning a known right." United States v. Klopfenstine, 708 F.3d 1023, 1023 (8th Cir. 2013). Therefore, Morales has "waiv[ed] any challenge to the seating of a juror on appeal." Id. Acknowledging Klopfenstine is controlling on this issue, Morales asks this panel to "review the matter accordingly," which we interpret as a request to reconsider Klopfenstine. "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." Mader v. United States, 654 F.3d

-11-

794, 800 (8th Cir. 2011) (en banc) (quoting <u>Owsley v. Luebbers</u>, 281 F.3d 687, 690 (8th Cir. 2002)). Accordingly, we cannot reconsider <u>Klopfenstine</u> and conclude Morales waived any objection to the seating of jurors.

Second, Morales argues the district court's statements during voir dire about a different criminal case were an improper show of authority. Specifically, at one point during voir dire the district court asked the potential jurors if anyone had particular prejudice against methamphetamine. A potential juror raised his hand and disclosed he was the victim of a methamphetamine-related crime the week before. The district court asked this juror if he could be fair, and he said he could. This juror then disclosed the person was wanted on a federal drug warrant, and the district court commented it would probably see the defendant the same day. The juror responded the warrant was out of Nebraska, not Iowa, and the district court acknowledged it would not, then, see the defendant. Morales did not object to this exchange, and now argues these comments by the district court were an improper display of authority and gave the jurors a misleading impression. Because Morales did not object below, we review for plain error. <u>United States v. Granados</u>, 117 F.3d 1089, 1093 (8th Cir. 1997). We determine the district court did not act improperly in engaging in the above-referenced exchange. There was no improper showing of district court authority because a federal district court does, in fact, have the authority to handle federal drug charges. <u>See</u> Comprehensive Drug Abuse Prevention and Control Act of 1970, codified at 21 U.S.C. §§ 801-971. The comments were also not misleading because the district court corrected itself once it learned the case at issue was in a different district. Accordingly, the district court did not plainly err in making statements about a different criminal matter.

E

Finally, Morales argues the district court erred in a variety of different ways in imposing her sentence. When we review a sentence, we "must first ensure that the

district court committed no significant procedural error," such as improperly calculating the guideline range. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). In the absence of procedural error, we "then consider the substantive reasonableness of the sentence." Id.

Morales begins by arguing the district court committed a procedural error by improperly calculating her guideline range when it imposed a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Even if we determine the district court procedurally erred by imposing this enhancement, "[p]rocedural errors, like the miscalculation of a defendant's offense level, are subject to harmless-error review." United States v. Sigillito, 759 F.3d 913, 940 (8th Cir. 2014), cert. denied, 135 S. Ct. 1019 (2015). Because application of the enhancement does not impact the mandatory minimum, Morales did not qualify for safety-valve relief, and, "[i]n the absence of a government motion, a district court is without authority to impose a sentence below a statutory minimum," United States v. Freemont, 513 F.3d 884, 888 (8th Cir. 2008), any error is harmless.

Morales also argues the district court imposed an unreasonable sentence because it relied too heavily on the testimony of her co-defendants. "We review the substantive unreasonableness of sentences under a standard akin to an abuse-of-discretion standard, cognizant that it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." United States v. Sayles, 754 F.3d 564, 567 (8th Cir. 2014). "A sentence may be unreasonable if the district court fails to consider a relevant factor which should have received significant weight; gives significant weight to an improper or irrelevant factor; or considers the appropriate factors but commits a clear error of judgment." Id. The district court discussed the proper 18 U.S.C. § 3553(a) factors and did not rely on any inappropriate factor or commit a clear error of judgment. Because Morales received the mandatory minimum

and the district court appropriately discussed and weighed the relevant factors, we find the sentence is not substantively unreasonable.

Morales also argues the district court erred in failing to provide her with safety-valve relief. The PSR recommended Morales be found ineligible for safety valve relief and she did not challenge this recommendation. "Because [Morales] did not raise this argument during the sentencing hearing, our review is for plain error." United States v. Atterberry, 775 F.3d 1085, 1088 (8th Cir. 2015), reh'g denied, No. 14-1354 (8th Cir. Feb. 17, 2015). Morales faced a statutory mandatory minimum sentence of 120 months of imprisonment based on the quantity of drugs involved in her conviction. See 21 U.S.C. § 841(b)(1)(A). The safety-valve exception to mandatory minimum sentencing statutes authorizes a district court to sentence a defendant below a mandatory minimum sentence if a defendant meets the five criteria listed in 18 U.S.C. § 3553(f). Morales asserts she meets all five requirements for safety-valve relief, including the requirement in § 3553(f)(5) that a defendant "truthfully provide[] to the Government all information and evidence [she] has concerning the offense or offenses." Morales bears the burden of establishing she qualified for safety-valve relief. United States v. Soto, 448 F.3d 993, 995 (8th Cir. 2006). Morales has not met this burden because she cannot establish she ever truthfully provided to the government all information about the charged offense. In fact, beyond a brief interaction with the Trooper Taylor during the traffic stop, Morales never provided additional information to the government. Accordingly, district court did not plainly err in failing to grant Morales safety-valve relief.

The district court varied downward to impose the mandatory minimum sentence of 120 months of imprisonment. The district court committed no procedural or substantive errors in the imposition of this sentence and we affirm the sentence.[3]

## III

Accordingly, we affirm the convictions and sentence.

_____

_____

[3]We have examined all other issues raised by Morales as relates to her sentence but find no other claims merit discussion. Therefore, we affirm the district court on those issues without comment. See 8th Cir. R. 47B.