# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2627
_____

United States of America

*Plaintiff - Appellee*

v.

Charles David Chastain

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 22, 2020
Filed: October 28, 2020
_____

Before SMITH, Chief Judge, BENTON and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

A jury convicted Charles Chastain of extortion, 18 U.S.C. § 1951(a), attempted extortion, 18 U.S.C. § 1951(a), and receipt of a firearm with intent to commit a felony, 18 U.S.C. § 924(b). He challenges the sufficiency of the evidence

on all counts and says the district judge[1] should have *sua sponte* recused at sentencing.  We affirm.

## I.

Charles Chastain retired from the Arkansas State Police in 2017 and began working as an auxiliary sheriff's deputy for the Arkansas County Sheriff's Office. He was assigned to the Tri-County Drug Task Force and to work with two confidential informants—Michael Caldwell and Caldwell's girlfriend, Cris Embree. Officers handling confidential informants make recommendations to prosecutors based on whether the informants provide helpful information.

A few months later, Chastain asked Caldwell to steal an ATV for him. Chastain texted:  "I don't want to put you in a bind, but I'm trying like hell to keep you out of the big house.  Every time [the Arkansas County Prosecuting Attorney and the Prairie County Sheriff] ask me I tell them you are working your ass off." Trial Tr. Vol. 1, 100:17–19.

Caldwell stole an ATV worth around $25,000 because "if [Chastain] didn't get what he wanted, he would use that against me and maybe tell [the prosecuting attorney or sheriff] that I wasn't doing what I was supposed to be doing."  *Id.* at 103:2–3.  Caldwell testified that he would not have stolen the ATV if Chastain had not asked him to.

Chastain paid Caldwell either $800 or $1,000 for the ATV.  Later, Chastain texted Caldwell:  "Man getting that thing is probably the only thing I have really done wrong in my life.  Y'all take care of me I will take care of y'all.  As long as y'all don't do anything stupid y'all are golden.  Just don't do anything without me knowing ahead of time."  *Id.* at 112:15–18.

---

[1]The Honorable J. Leon Holmes, Senior United States District Judge for the Eastern District of Arkansas.

- 2 -

Later that year, Caldwell and Embree were stopped by Arkansas State Police with drugs in their car. The arresting officer called Chastain, who asked that Caldwell and Embree not go to jail. The arresting officer testified that he let Caldwell and Embree go because he was under the impression that they were working on a case with Chastain. He said he would not have let the two go were it not for Chastain.

The scheme began to unravel when Chastain shifted his interest from ATVs to stolen guns. Chastain asked Caldwell if he knew of any guns on the street that Chastain could buy or steal for his personal use. A later recording suggested these guns would be "hot," *i.e.* stolen. This made Caldwell nervous, so he called the FBI. Special Agent Aaron Green provided Caldwell with three FBI rifles, each manufactured outside Arkansas. Caldwell told Chastain that the firearms were stolen, and then gave them to Chastain. Chastain was supposed to pay $300 for the guns, but he did not pay at delivery.

After being arrested, Chastain admitted that he used Caldwell, Embree, and his official position to obtain the ATV and firearms. Chastain also admitted that he intended to purchase stolen guns. He further admitted that he had informed Caldwell and Embree that if they were stopped with the ATV or weapons, they were to tell police that they were for Chastain in his professional capacity as an auxiliary sheriff's deputy.

Chastain was indicted and went to trial. He twice moved for a judgment of acquittal. The district court denied both motions. He was convicted on all counts.

At sentencing, Chastain appeared before the same district court judge who handled his trial.[2] The judge told the parties that he had traded text messages with

---

[2]At some point after sentencing, Chastain's case was reassigned to another district judge.

his brother about Chastain. In a June 2, 2019 text, the judge's brother asked him if Chastain had been sentenced yet. The judge responded by stating "I don't recall. I would have to look." Sent. Tr. Vol. 1, 2:20. Then, on June 21, 2019, the judge's brother texted him again, stating "I'm hearing David Chastain is still a policeman. Can he do that??" *Id.* at 2:25–3:1. The judge did not respond.

The district court judge told counsel that he was not sure if his brother's texts were out of "idle curiosity or if there has been some connection or contact with [his brother] and Mr. Chastain or a friend or family of [his brother] and Mr. Chastain. It's very possible. I don't know whether that's happened or not. And if there has been, I don't know whether it's good or bad or indifferent." *Id.* at 3:4–8. The judge asked if the parties wished to make any motions. Neither party did. The district court sentenced Chastain to 30 months imprisonment, a downward departure from the Guidelines range of 41 to 51 months. Chastain timely appealed.

## II.

Chastain challenges the sufficiency of the evidence on all three convictions. We review *de novo*. *United States v. Johnson*, 745 F.3d 866, 868–69 (8th Cir. 2014). "We view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence." *United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013) (citations and quotation marks omitted). "We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.*

## A.

Chastain argues that the evidence is insufficient to prove he committed extortion or attempted extortion under color of official right. A public official commits extortion in violation of 18 U.S.C. § 1951 when he "obtain[s] a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992). Outside of the campaign

contribution context, an explicit quid pro quo is not required. *See United States v. Kalb*, 750 F.3d 1001, 1004 (8th Cir. 2014) (citation omitted).

Chastain asked Caldwell to steal an ATV and firearms. In exchange, Chastain paid a fraction of those items' market price and assured Caldwell that if "[y]'all take care of me I will take care of y'all. As long as y'all don't do anything stupid y'all are golden. Just don't do anything without me knowing ahead of time." Trial Tr. Vol. 1, 112:15–18. Chastain paid off that assurance by, among other things, convincing Arkansas State Police to let Caldwell and Embree off after they were stopped with drugs. This, as with the recommendations Chastain made to the prosecutor in Caldwell's case, was an official act. *McDonnell v. United States*, 136 S. Ct. 2355, 2370 (2016) (official acts include "provid[ing] advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official"). There was sufficient evidence for a jury to convict Chastain of extortion and attempted extortion.[3]

## B.

18 U.S.C. § 924(b) makes it a crime to "ship[], transport[], or receive[] a firearm or any ammunition in interstate or foreign commerce" with the intent to commit a felony. The jury convicted Chastain of receipt of a firearm with the intent to commit the felony of possession of a stolen firearm under 18 U.S.C. § 922(j).

---

[3]Chastain argues that the district court's jury instruction failed to instruct the jury on the "quid pro quo" requirement in *Evans*. An explicit quid pro quo is not required, but we agree that the jury instruction should have included the "in return for an official act" language from the Supreme Court's decision in *Evans*. *See United States v. Evans*, 30 F.3d 1015, 1018 (8th Cir. 1994) (affirming such an instruction). That said, Chastain failed to object to the instruction below, which requires him to show plain error. His briefing argues only that the instruction was in error, so he has not met that demanding standard. *See United States v. Barthman*, 919 F.3d 1118, 1121 (8th Cir. 2019) (criminal defendant bears the burden of establishing all four prongs of plain error review).

Chastain challenges the sufficiency of the evidence of this conviction in two ways. Neither is persuasive.

i.

Chastain first says that 18 U.S.C. § 924(b) requires direct interstate receipt of the firearms, and the evidence showed his receipt was entirely intrastate. While Chastain moved for acquittal below, he did not raise this objection at trial. We review for plain error. *United States v. Clarke*, 564 F.3d 949, 957 (8th Cir. 2009). To show plain error, Chastain must establish that (1) the district court committed an error, (2) the error is clear and obvious, and (3) the error affects his substantial rights. *United States v. Coleman*, 961 F.3d 1024, 1027 (8th Cir. 2020). Assuming the first three prongs are met, we will exercise our discretion to correct such an error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation omitted). Chastain bears the burden of establishing all four prongs of plain error review. *Barthman*, 919 F.3d at 1121.

Chastain cannot meet the second prong.[4] An error is plain if it is "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). We have never addressed whether 18 U.S.C. § 924(b) requires direct interstate receipt of the firearms. In support of his argument, Chastain relies almost entirely on an out-of-

---

[4]Even if we reviewed the conviction under sufficiency of the evidence, as Chastain urges, he still loses. The jury charge on the commerce element required proof that "the firearm was transported across a state line at some point during or before the defendant's possession of it." D. Ct. Dkt. 71 at 12. Chastain did not object. Where a defendant does not object to a jury instruction at trial, "a conviction may be upheld against a sufficiency challenge where a rational jury could have found, beyond a reasonable doubt, each element of the offense as charged in the jury instructions." *United States v. Johnson*, 652 F.3d 918, 922 (8th Cir. 2011). The Government put on evidence that the weapons were manufactured outside of Arkansas and that Chastain possessed the weapons in Arkansas. This is sufficient for a jury to find the interstate commerce element as defined in the jury instructions.

circuit district court opinion. *See United States v. Havelock*, 560 F. Supp. 2d 828, 832 (D. Ariz. 2008) (holding intrastate receipt of a firearm could not support conviction under § 924(b)), *rev'd in part on other grounds* 619 F.3d 1091 (9th Cir. 2010), *rev'd in part on other grounds on reh'g en banc*, 664 F.3d 1284 (9th Cir. 2012). That decision is not a model of clarity. That district court reviewed the statute under a less deferential standard as the court of first impression. An out-of-circuit district court decision recognizing multiple rational readings of § 924(b) and adopting the one most favorable to the criminal defendant is a far cry from showing Chastain's argument is "clear under current law."[5]

ii.

Chastain next argues that there was insufficient evidence to support his gun conviction because the guns were not stolen. We disagree. All that was required was evidence that he intended to obtain stolen guns. Section 924(b) is an attempt crime: it codifies the requirements of attempt law but replaces the substantial step requirement with a requirement that the defendant ship, transport, or receive a firearm. *See United States v. Burks*, 135 F.3d 582, 583 (8th Cir. 1998) ("To prove attempt, the government must show 1) intent to engage in the crime and 2) conduct constituting a substantial step towards the commission of the crime."). By its own terms, an attempt crime does not require the commission of the underlying felony. *United States v. Nguyen*, 829 F.3d 907, 917 (8th Cir. 2016) ("In attempt cases, a defendant may be convicted regardless of whether the attempt is successful."). Here, the Government showed that Chastain had the intent to violate each element of the underlying substantive offense.

Plus, "factual impossibility is not a defense to an inchoate offense such as conspiracy or attempt." *United States v. Joiner*, 418 F.3d 863, 869 (8th Cir. 2005) (cleaned up). "Factual impossibility occurs when the objective of the defendant is

_____

[5]Chastain's argument that the district court plainly erred in its jury instruction on the interstate nexus fails for the same reason.

proscribed by the criminal law but a circumstance unknown to the actor prevents him from bringing about that objective." *United States v. Sobrilski*, 127 F.3d 669, 674 (8th Cir. 1997). So, it did not matter whether the FBI provided Caldwell with guns that were stolen, only that Chastain's objective was that the guns be stolen. *See United States v. Rehak*, 589 F.3d 965, 971 (8th Cir. 2009) (affirming conviction for conspiracy to violate civil rights even though the intended target was fictitious and therefore did not have civil rights). There was sufficient evidence to convict Chastain of possession of a firearm with intent to commit a felony.[6]

## III.

Finally, Chastain argues that the district judge reversibly erred by failing to *sua sponte* recuse at sentencing. Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." When a defendant fails to preserve the issue of recusal for appeal, "we review the lower court's inaction under the 'plain error' standard." *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013). "Our cases reveal a reluctance to require a judge to recuse himself or herself *sua sponte*. Despite the sweeping language of 28 U.S.C. § 455(a) . . . the statute does not extend literally to any kind of doubtful behavior . . . . [A judge's] opinions warrant recusal under § 455(a) only if they 'display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *United States v. Sypolt*, 346 F.3d 838, 839 (8th Cir. 2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

---

[6]In his brief, Chastain relies heavily on the Fifth Circuit's decision in *United States v. Trevino*, 720 F.2d 395, 401 (5th Cir. 1983) (holding that "in a prosecution under section 924(b) for receipt of a firearm with intent to violate section 2113, proof of the section 2113(f) status of the bank involved is an essential element of the crime charged"). While it is questionable the degree to which *Trevino* advances Chastain's argument, *see id.* (recognizing that § 924(b) is "an inchoate, or anticipatory, offense," where "culpability is based on a defendant's intent rather than on the consummation of the underlying offense"), because we have applicable circuit precedent of our own, we do not rely on *Trevino*.

While we do not know why the district judge's brother was interested in the case (nor did the district court), nothing in the text messages disclosed by the district judge revealed any favoritism or antagonism *by the judge*. The judge asked the parties if they observed any potential issues and offered a chance to object. No one did. The district court did exactly what it should have done after receiving unsolicited, case-related messages from a family member, so we find no error—plain or otherwise.

## IV.

The judgment of the district court is affirmed.

_____